728 So.2d 730 (1999)
In re CERTIFICATION OF the NEED FOR ADDITIONAL JUDGES.
No. 94,890.
Supreme Court of Florida.
February 18, 1999.
HARDING, C.J..
Under the provisions of article V, section 9 of the Florida Constitution, the Supreme Court of Florida is responsible for certifying its findings and recommendations concerning the need for increasing or decreasing the number of judges required to consider cases filed before the respective courts. We appreciate the fiscal ramifications of certifying the need for new judges and have adopted a policy of doing so only when we are certain that such a need exists. To this end, we have analyzed case filings and evaluated the growth in judicial workload over the past several years. Our analysis included consideration of a variety of supplemental data related to workload as well. These data and the requests of the various circuit and district *731 courts have been made available to the Legislature through the Office of the State Courts Administrator.
After carefully reviewing requests for a total of 45 new judges, we hereby certify the need for 1 additional district court of appeal judge, 25 additional circuit judges, and 6 additional county judges, for a total of 32 new judicial positions. We recognize this is an unusually large request for new judgeships. However, the size of this year's certification is largely attributable to the fact that authorizing legislation for 18 additional circuit and 5 additional county judgeships, certified as necessary last year, failed to pass during the 1998 legislative session. A comparison of the requests for new judges filed by the respective courts and the new judges certified as needed for Fiscal Year 1999-00 follows:

District Court Reqest Certified
Fifth 1 1
Circuit Courts County Court
Circuit Request Certified County Request Certified
First 1 1 Okaloosa 1
Second 1 1 Leon 1 1
Third 1 1 Columbia 1
Fourth 1 1 Duval 1 1
Fifth 2 2 Lake 1
Sixth 2 2
Seventh 1 1 Putnam 1 1
Eighth 1 1
Ninth 2 2 Orange 1
Tenth 1 1 Poll 2 2
Eleventh 2 1 Dade 1
Twelfth 1 1 Sarasota 1
Thirteenth 2 2 Hillsborough 1 1
Fifteenth 2 1 Palm Beach 2
Seventeenth 3 3 Broward 2
Eighteenth 1 1 Brevard 1
Nineteenth 2 2
Twentieth 1 1
Circuit Request Certified County Request Certified
Totals 27 25 Totals 17 6

Appellate Courts
The criteria for certification of the need for additional judges in the district courts of appeal are set forth in rule 2.035(b)(2), Florida Rules of Judicial Administration. The last new judgeships for the district courts were authorized in 1993. Since that time the numbers of annual filings in each district court have risen steadily. In 1998 a total of 21,334 cases were filed in the district courts for an increase of 15.5 percent since 1993.
Each of the district courts have employed an array of strategies to address increased workload pressures. They have streamlined internal operating procedures, established central legal research staff to handle selected matters, and assigned senior (retired) judges to hear appeals on a temporary basis. The First and Fourth district courts of appeal utilize appellate mediation to improve case resolution. We have encouraged the district courts to continue to explore and develop alternative and creative means to efficiently and fairly hear the cases brought before them. Such efforts have enabled the district courts to address increases in judicial workload *732 without the continued addition of new appellate judges. However, several of these courts are approaching the point when additional judgeships will be needed.
In 1997 this Court directed the Judicial Management Council to conduct an in-depth study of workload, jurisdiction and related policy issues for the district courts of appeal. The Council's Committee on Appellate Court Workload and Jurisdiction proposed the adoption of a new appellate court workload standard of 225 dispositions after submission on the merits per judge and an additional appellate court workload standard of 385 case filings per judge. These two standards, whether considered separately or together, represent the levels at which a district court, presumptively, is in need of additional judicial resources. These standards are significantly higher than the current standard of 250 case filings per judge, and reflect the infusion of support staff and other resources over the last decade which have enabled the district courts to keep pace with workload increases.
We certify the need for one additional judgeship for the Fifth District Court of Appeal. In 1998 the statewide average for dispositions after submission on the merits per judge was 209. The Fifth District Court of Appeal ranked first among these courts with a total of 264 dispositions after submission on the merits per judge in 1998. The 1998 statewide average for filings per judge was 349. The Fifth District Court of Appeal ranked first with 393 filings per judge in 1998.
In addition to authorizing and funding an additional judge for the Fifth District Court of Appeal, we strongly urge the Legislature to fund the budget requests of the district courts of appeal for mediation services, central staff attorneys, computer technology, and additional technology staff.
In examining the workload of the intermediate appellate courts we also considered the report of the Committee to Study the Need for Additional District Courts of Appeal, of the Judicial Management Council. The Committee was charged with studying both the need for and location of additional district courts. The Legislature has been provided copies of the Committee's report pursuant to proviso language in the FY 1998-99 General Appropriations Act.
The Committee studied and reported on the past and projected growth in volume and distribution of caseload for the district courts of appeal, as well as their effect on court collegiality. Also considered were population projections, alternative sites for additional courts, a variety of possible realignments of the judicial circuits, and public input on draft recommendations. The Committee concluded that "[w]ithin five years, there will be a need for two additional district courts of appeal. This recommendation is based upon a workload standard of 385 filings per judge and an allocation of ten judges in each court with a maximum of 12 judges in any court," and that "planning should begin now for implementing this recommendation." The creation of two additional districts would require realignment of numerous judicial circuits among the district courts of appeal. The Committee proposed that the seven district courts of appeal be headquartered in Tallahassee, Orlando, Miami, West Palm Beach, Jacksonville, Tampa, and western Broward County.
The Court is appreciative of the extraordinary time and effort the members of the Committee to Study the Need for Additional District Courts of Appeal gave to their assigned task. Their report is thoughtful and well substantiated. It is clear the historical growth in district court caseloads may require us to revisit this concern in the future.
However, there are several reasons the Court is reluctant to recommend the Legislature initiate planning on the Committee's recommended plan for seven district courts at this time. First, while case filings from 1993 through 1998 increased by 25 percent, the rate of growth in district court of appeal caseloads in the past few years has slowed. There were actually 891 fewer total filings in 1998 than in 1997.
A number of other factors outside the Committee's charge need to be addressed as a plan for increasing the number of district courts is developed. This Court is concerned that as new courts are brought on line the *733 number of conflicting rulings will increase. The creation of additional courts will require the development of plans for and reallocation of judges and court staff. Further, the substantial fiscal implications of the Committee's proposals or others the Legislature may consider should be examined carefully.
Again, it is noted that the Committee was not asked to make an assessment of either the fiscal or operational impacts of the various alternatives for increasing or reconfiguring the district courts. These and other pertinent factors should, however, be part of the future dialogue between the judicial and legislative branches on the need for additional courts.

Trial Courts
The criteria for certification of the need for judges in trial courts are set forth in rule 2.035(b)(1), Florida Rules of Judicial Administration. Consistent with previous practice, we have placed the greatest weight on quantitative data reflecting the growth and composition of caseloads in the various circuits and counties. We have determined that the most consistent and reliable measure of workload at the trial court level is total case filings per judge. Courts at or above a threshold of 1,865 filings per judge are presumed to be working beyond capacity, though those data alone are not sufficient to either guarantee or preclude a certification of need. In addition to filings data, other quantitative and qualitative data on factors described in rule 2.035(b)(1)(B), Florida Rules of Judicial Administration, were considered.
It is noted that in response to a report by the Office of Program Policy Analysis and Governmental Accountability in January of 1998, this Court initiated several enhancements to the current certification process. All requests for additional circuit and county court judges were required to be submitted on a standardized judgeship needs application so that data related to the workloads of the respective jurisdictions could be more effectively evaluated and compared. This format enabled the Court to assess more accurately the extent to which the requesting courts were employing best practices in managing their caseloads. For instance, more uniform information was provided on how trial courts were able to utilize senior judges; county court judges on temporary assignment to circuit court; supplemental hearing officers; various types of mediation; and case management policies and personnel. We recognize that some courts do not have the level of resources enjoyed by others.
The application for additional judges also yielded more complete and uniform information on factors which made the mix of cases in the various trial courts more or less demanding of judicial resources. Factors evaluated in this regard included jury trial rates; the extent and type of complex litigation being filed in the jurisdiction; requirements for foreign language translation; geographical constraints on judicial assignments and work; and the ratio of defendants to counts in criminal cases. A summary of the factors considered with regard to each trial court will be provided separately from this opinion by the Office of the State Courts Administrator.
After reviewing all the available data, we find it necessary to certify the need for 25 additional circuit court judges for Fiscal Year 1999-00, as follows: one additional circuit court judge each for the First, Second, Third, Fourth, Seventh, Eighth, Tenth, Eleventh, Twelfth, Fifteenth, Eighteenth, and Twentieth judicial circuits; two additional circuit court judges each for the Fifth, Sixth, Ninth, Thirteenth, and Nineteenth judicial circuits; and three additional circuit court judges for the Seventeenth Judicial Circuit.
The overall workload of Florida's circuit courts continues to grow at a steady rate. From actual 1993 data through forecasted 1999 data, total filings are projected to increase 16 percent. One category of cases that has grown dramatically statewide and has significantly impacted judicial workloads is domestic violence. Filings in this category have grown from 44,932 in 1992 to a projected 74,906 for 1999, or approximately 67 percent. Many of the trial courts have created specialized divisions to handle these cases, which often limits the availability of judges assigned to those divisions to hear other matters.
*734 Not only are circuit court filings increasing, but also the collective perception of the trial court bench is that many categories of cases being filed are more labor intensive than in previous years. Changes in the statutes, case law, and court procedure in recent years have necessitated more hearings for various types of cases, mandated priority handling for certain matters, and required judges to render written findings of fact and conclusions of law more frequently. Often these changes cannot be measured in terms of a need for full-time judicial positions in a particular jurisdiction, but instead serve to gradually increase workload across the board.
We also recognize the obligation of the Judicial Branch to join with the Executive and Legislative Branches to give priority to our State's most precious resourceour children. Two recent laws enacted by the Legislature are expected to have substantial impacts on judicial workload statewide. Chapter 98-403, Laws of Florida, made significant changes in Florida's child welfare system, with regard to children who are dependent on the state for protection. Prior to the effective date of the new law the courts were required to conduct judicial review hearings every six months, but only in cases where the children were placed in foster care. These foster care cases comprised less than 40 percent of the total dependency caseload. As of October 1, 1998, the courts are now mandated to conduct judicial review hearings every six months on all dependency cases. Mandatory pretrial status conferences are now required in every case involving termination of parental rights. Not only have more hearings been added, the length of such hearings is often greater because the new statutory provisions expanded the information which the court must consider at each hearing. Courts are now required to make lengthy written findings of fact for each hearing that they conduct as well.
Additionally, Chapter 98-64, Laws of Florida, referred to as the "Jimmy Ryce Act," is expected to result in a substantial increase in judicial workload. We considered a range of estimates from several legislative and executive branch sources on the number of civil petitions that may be filed on adults and juveniles under this law, and the resulting trials. The anticipated growth in the total number of civil trials in the circuit courts is expected to range from 8 to 13 percent, depending on which data are considered. This could translate into the need for several additional judgeships on a statewide basis, though few, if any, circuits are expected to require a full-time equivalent judge for this purpose alone. To some extent, this workload may be cumulative since persons who are subject to involuntary civil commitment under the Act, as the result of a unanimous jury verdict, are eligible to seek review of their cases on an annual basis. Further, where a jury fails to reach a unanimous verdict, under certain circumstances the case may be retried.
We gave careful consideration to all of the foregoing factors in establishing the necessity for additional judgeships not only for trial courts at or above the threshold, but also for trial courts that are somewhat below the standard as well. Ten of the courts for which we are currently certifying a need for an additional circuit court judge or judges are forecast to exceed the 1,865 filings per judge threshold in 1999, including the Second, Third, Fifth, Sixth, Ninth, Tenth, Twelfth, Eighteenth, Nineteenth and Twentieth judicial circuits. We also certify the need for one additional circuit court judge each to the First, Fourth, Seventh and Eighth judicial circuits, which are expected to have 1999 workloads marginally below the threshold. Other circuits whose projected filings per judge were below the threshold, but for which we found justification to certify the need for additional judgeships included the Eleventh (one judge), Thirteenth (two judges), Fifteenth (one judge), and Seventeenth (three judges) judicial circuits.
While we recognize that all of the circuits are faced with mounting workload pressures, we continue to limit the number of new judgeships certified by supplementing the available judicial resources with senior (retired) judges. We also encourage the circuits to maximize the use of county court judges on temporary assignment to the circuit bench where appropriate. In addition to *735 the effective and cost efficient use of senior (retired) judges and county judges on temporary assignment, trial courts have employed an array of resources and case management strategies including: differentiated case management to consolidate and expedite certain types of cases; the use of general or special masters and child support enforcement hearing officers; court-ordered mediation or arbitration of family, civil, and selected juvenile matters; and the assignment of trial court law clerks to assist with case reviews, improved case management practices, and legal research. This Court encourages the continued use of these alternatives.
Caseloads in Florida's county courts continue to increase at a steady rate as well. County court case filings increased 5.1 percent from 1993 to 1997. This increase is attributable to growth in both criminal and civil case filings, and was considered in evaluating the need for additional county court judges. We relied principally on case filings data that were adjusted to include only criminal, civil, and driving under the influence and other criminal traffic cases. As in the past, worthless check cases and civil traffic infractions were not included in the threshold. This is due to the volume of such cases, their limited requirements for judicial attention per case, diversion of large numbers of worthless check cases in selected jurisdictions, and variability in numbers of such cases reported from county to county.
County courts with caseload forecasts at or exceeding 6,114 filings per judge are presumed to be operating at or above capacity. All of the counties for which we certify the need for an additional county court judge are projected to exceed the 6,114 threshold in 1999. We certify the need for six new county court judgeships for Fiscal Year 1999-00: one each for Leon, Duval, Hillsborough, and Putnam counties, and two for Polk County.
The decision not to certify the need for an additional county court judge in several counties at or near the threshold was difficult. Such county courts are realizing growing workload pressures and may require relief during the upcoming year. We are committed to providing necessary senior (retired) judge days and working with the respective chief judges on other measures to provide relief in those county courts.
Many of the county courts, particularly in the urban jurisdictions, have used available state and local funding for civil traffic infraction hearing officers. Preliminary data from these courts indicate that such hearing officers preside over between 20 percent and 95 percent of civil infractions, depending on the county. Hearing officers have thus provided much needed relief in such courts and, to some extent, obviated the need for additional county court judges. We are grateful to the Legislature for providing matching funds for hearing officers and find the hearing officers a necessary adjunct to the county court judiciary.
Proviso language in the FY 1998 General Appropriations Act directed this Court to undertake development of Delphi-based case weights and measures of optimum caseload, to be used in the process of certifying the need for additional judges in the future. The State Courts System has contracted with the National Center for State Courts in that regard. The timetable for this effort provides for completion of the case weights and standards for optimum caseload for use in next year's judicial certification process, contingent upon additional funds being appropriated by the Legislature.
This Court is of the opinion that the serial addition of circuit and county court judges will not in and of itself ensure the increased efficiency and performance of the Florida State Courts System that the citizens expect and deserve. We will continue to rely heavily on the allocation of alternative resources as stated in our Fiscal Year 1999-00 Legislative Budget Request for additional senior (retired) judge days, law clerks, automation and other technology, and specialized case management programs and personnel.
Nevertheless, full funding of the requests certified in this opinion is absolutely essential if Florida's courts are to meet the workload challenges documented herein and fulfill their constitutional mandate to resolve cases in a fair, impartial, and timely manner. Therefore, this Court encourages the Florida Legislature to authorize the judgeships certified *736 herein, effective not later than October 1, 1999.
It is so ordered.
SHAW, WELLS, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.