SHAW, J.
Trial judges in several circuits have petitioned this Court to amend the Florida Rules of Juvenile Procedure to permit juveniles to attend detention hearings via audio video device. We have jurisdiction. Art. V, § 2(a), Fla. Const. We adopt the proposed amendment on an interim basis as explained below.
The facts are set out fully in our initial opinion in this case. See Amendment to Florida Rule of Juvenile Procedure 8.100(a), 667 So.2d 195 (Fla.1996). Florida Rule of Juvenile Procedure 8.010 provides that no child may be placed in detention without a hearing where probable cause and the need for detention are determined:
RULE 8.010 DETENTION HEARING
(a) When Required. No detention order provided for in rule 8.013 shall be entered without a hearing at which all parties shall have an opportunity to be heard on the necessity for the child’s being held in detention....
[[Image here]]
(f) Issues. At this hearing the court shall determine the following:
(1) The existence of probable cause to believe the child has committed a delinquent act. This issue shall be determined in a nonadversary proceeding. The court shall apply the standard of proof necessary for an arrest warrant and its finding may be based upon a sworn complaint, affidavit, deposition under oath, or, if necessary, upon testimony under oath properly recorded.
(2) The need for detention according to the criteria provided by law. In making this determination in addition to the sworn testimony of available witnesses all relevant and material evidence helpful in determining the specific issue, including oral and written reports, may be relied upon to the extent of its probative value, even though it would not be competent at an adjudicatory hearing.
*542 “[Cintería provided by law” in subsection (2) include those requirements set forth in section 39.042, Florida Statutes.[1]
Judges in the Fifth, Ninth, Thirteenth, Seventeenth, and Nineteenth Judicial Circuits petitioned this Court to amend Florida Rule of Juvenile Procedure 8.100(a) to allow juveniles to attend detention hearings via audio-video device:
RULE 8.100 GENERAL PROVISIONS FOR HEARINGS
Unless otherwise provided, the following provisions apply to all hearings:
(a) Presence of the Child. The child shall be present unless the court finds that the child’s mental or physical condition is such that a court appearance is not in the child’s best interests, except that the child’s presence may be either in person or by electronic audiovisual device in the discretion of the Court for detention hearings.
This Court in our original opinion discussed the views of both the proponents and opponents of the proposed amendment:
The judges make the following points: Similar procedures are used for adults at first appearance and arraignment; this practice will eliminate the need for transporting juveniles from the detention center to the courthouse, which will end fights during transport and give juveniles more time to attend classes and counseling sessions at the center; this practice will eliminate the parading of juveniles through the courthouse in handcuffed groups and will do away with outbursts and fights in the courtroom.
Opponents of the amendment include individual public defenders, the Juvenile Court Rules Committee of the Florida Bar, and the Juvenile Justice Committee of the Florida Public Defenders Association, who make the following points: Unlike first appearances, detention hearings are evidentiary and adversarial in nature, often requiring witness confrontation, challenging of evidence, and review of records and documents; the practice will put the public defender and state attorney on unequal footing by giving the state attorney the advantage of his or her physical presence in the courtroom with the judge while placing the public defender far away at the detention center with the juvenile; and this practice will deprive juveniles of the opportunity to have meaningful contact with parents, guardians, and counsellors.
*543 The proposed amendment has been unanimously endorsed by the Juvenile Section of the Florida Conference of Circuit Judges and approved by the public defender of the thirteenth judicial circuit. Further, the Board of Governors of The Florida Bar has voted to disagree with the Juvenile Court Rules Committee’s opposition to the amendment.
Amendment, 667 So.2d at 196. We authorized the above circuits, as well as the Sixth Judicial Circuit, to conduct a one-year pilot program to evaluate the proposed rule change:
Based on the foregoing, we decline at this time to adopt the proposed rule change but authorize the chief judge in each of the above circuits to institute a one-year pilot program that will allow juveniles to attend detention hearings via audiovideo device. At the conclusion of one year, the chief judge in each of the above circuits that chooses to implement such a pilot program will submit to this Court a report evaluating the program.
Id. at 197.
The petitioning circuits[2] have now completed the one-year program and have submitted their reports to the Court. The evaluations are overwhelmingly favorable. Nevertheless, several non-participating public defenders and the Florida Public Defenders Association continue to oppose the program, citing many of the same concerns they expressed initially — i.e., primarily the concern that the program is averse to the interest of juveniles because it “dehumanizes” juvenile proceedings. See Amendment, 667 So.2d at 196. While we agree that the program depersonalizes the proceedings to a degree, we find that this result is no more “dehumanizing” than the fights, long waits, and shackles that plague the current system in some circuits, as pointed out below.
This Court recognized in our initial opinion in this case that there is a place in Florida’s courtrooms for technological innovation in juvenile proceedings:
While every Florida citizen is entitled to due process of law in any legal proceeding where his or her personal freedom is directly in issue, this right is not vitiated by technological changes in court procedure. Attendance of adults via audiovisual device at first appearance and arraignment “has [proven] successful ... [and] has met with the substantial approval of the arrested persons concerned.” Florida Bar re Amendment to Rules—Criminal Procedure, 462 So.2d 386, 386 (Fla.1984). See generally Fla. R.Crim. P. 3.130, 3.160.
While detention hearings differ from adult proceedings in several respects, we note that it is the juvenile judges themselves who have initiated the present proposal. These judges are intimately familiar with the way detention hearings function and have no vested interest in the proposal, except to make the juvenile justice system work more effectively-
Amendment to Fla. Rule of Juvenile Procedure, 667 So.2d at 196-97. We continue to endorse technological improvements in courtroom procedure.
As noted above, the response to the pilot programs has been overwhelmingly favorable. The participating judges, juvenile justice officials, and state attorneys, and most of the participating public defenders, wholeheartedly endorse the program. In fact, no participating chief judge has rejected the program or reported any major problem. Circuit Judge Melanie May in oral argument before this Court opined that the program promotes the interest of juveniles. She noted that the incidence of injury to juveniles resulting from fights and disruptions (e.g., during transport, in the holding cells, and in the courtroom) was drastically reduced under the pilot program. Chief Judge Dennis Alvarez *544 echoed this finding in his report and further pointed out that the amount of “down time” for juveniles (e.g., missed classes, counseling sessions, group therapy sessions, and medical appointments) was diminished, and the spectacle of juveniles being paraded through the courthouse in handcuffs and shackles was eliminated.
Chief Judge Alvarez explained in detail the benefits of the program:
Since the inception of the pilot project, approximately 2,900 children have attended a detention hearing via video court, and the benefits to the children have been numerous. First and foremost, they no longer have to be transported in crowded vans, through rush hour traffic and then spend several hours sitting in the holding cells at the courthouse. The juveniles are no longer humiliated by being paraded through the courthouse in handcuffs and shackles. If the judge orders them to be released, they can be released in a more timely fashion since they are already at the detention center.
The juveniles also spend less time away from their classes, groups, and appointments. If they have any physical and mental health crises, there are professionals available immediately. The detention center staff can provide the public defender with the most accurate and up-to-date information on the child’s educational, mental, and physical needs in order to better assess the child’s case. In short, the current procedures are far less traumatic to the child than the procedures used prior to this pilot project.
The judges conducting video juvenile detention hearings consistently felt the program was beneficial to the children and expressed hopes that it will be continued. The judges all agreed that the children’s rights and their attorney-client privilege have been well preserved. The judges stated that they thought the children took the detention hearings seriously, although one judge lamented that he thought that his admonishments may be more effective in person.
The only shortcoming of the pilot project is the burden placed on the public defender in allocating attorneys. Video detention hearings require the public defender’s office to have two attorneys handle the detention hearings. One attorney is at the JDC to represent the children in secure detention and one attorney is in Courtroom 29 to confer with the parents and to represent any children who are in non-secure detention and appear at their detention hearings. The biggest hardship is on the public defender at JDC, who has to rush back to the downtown courthouse (a twenty minute drive) for adjudicatory hearings immediately following the detention hearings. The public defender at the JDC is sometimes late to court. However, the judges have been able to handle other cases until the JDC attorney arrives. It is anticipated that these internal scheduling conflicts can be worked out in order to ensure this project’s continued success.
Attached to this report are letters from Larry Lumpee, Juvenile Justice Manager, Department of Juvenile Justice; R.L. Pete Edwards, DCMC Supervisor, Department of Juvenile Justice; Richard Ake, Clerk of Court; Harry Lee Coe, III, State Attorney; and Julianne M. Holt, Public Defender, all supporting continued use of video juvenile detention hearings. Therefore, on behalf of the Thirteenth Judicial Circuit, I respectfully request this Court to authorize the continued use of electronic audiovisual devices for juvenile detention hearings by amending Florida Rule of Juvenile Procedure 8.100(a).
This evaluation of the pilot program in the thirteenth circuit is representative of the evaluations in the other participating circuits.
Our purpose in implementing the pilot program in the present case was simple— *545 to collect practical information and firsthand observations concerning the routine workings of the proposed system. When this Court is operating in its supervisory administrative capacity, we at times must rely on Florida’s court officers to serve as our eyes and ears. The candid observations of each participant in the pilot program — i.e., each judge, juvenile official, state attorney, and public defender — are indispensable to this Court in assessing the merits of the proposed program. The Court will not lightly discount the reports of these individuals who worked diligently to implement the program and who were intricately involved in its day-to-day operation. In counterpoint, we note that none of the opponents of the amendment who appeared before this Court professed a first-hand familiarity with the program, i.e., they did not assert that they have participated in any way — not even as observers' — in the pilot program.
In light of the highly favorable reports, we adopt on an interim basis the above amendment to Florida Rule of Juvenile Procedure 8.100(a), which shall become effective upon the filing of this opinion. See Fla. R. Jud. Admin. 2.130. The Clerk shall publish the amended rule as soon as practicable, and we will receive commentary from interested persons for a period of ninety days from the date this opinion is filed. At the expiration of the ninety-day period, we will determine whether any further action is necessary. We direct the Juvenile Procedure Rules Committee of The Florida Bar to study this matter further and make recommendations concerning a permanent rule.
We fully recognize that the petitioning circuits are acting out of a genuine concern for the welfare of juveniles, but we cannot ignore the pleas of those who assert that Florida’s children at times are shortchanged in the allocation of judicial resources. Accordingly, we use this opportunity to express our concern that each judicial circuit in the state ensure that its juvenile division is treated second to none in the allocation of judicial resources.[3] Florida’s oft-repeated pledge that “our children come first” cannot ring hollow in — of all places — our halls of justice.[4] Judges, prosecutors, public defenders and others serving in the juvenile system cannot hope to make a difference in the life of a single troubled child if they must contend with staggering caseloads made worse by the maldistribution of judicial resources. Technology may offer one innovative way to help courts cope, but it is no substitute for an allocation of resources that meets the needs of society’s most precious resource — its children.
It is so ordered.
HARDING, C.J., WELLS, J., and OVERTON, Senior Justice, concur.
LEWIS, J., dissents with an opinion, in which ANSTEAD and PARIENTE, JJ„ concur.

.Section 39.042, Florida Statutes (Supp. 1994), provides in part:
39.042 Use of detention.—
(1) All determinations and court orders regarding the use of secure, nonsecure, or home detention shall be based primarily upon findings that the child:
(a) Presents a substantial risk of not appearing at a subsequent hearing;
(b) Presents a substantial risk of inflicting bodily harm on others as evidenced by recent behavior;
(c) Presents a history of committing a property offense prior to adjudication, disposition, or placement;
(d) Has committed contempt of court by:
1. Intentionally disrupting the administration of the court;
2. Intentionally disobeying a court order; or
3. Engaging in a punishable act or speech in the court’s presence which shows disrespect for the authority and dignity of the court; or
(e)Requests protection from imminent bodily harm.
(2)(a) All determinations and court orders regarding placement of a child into detention care shall comply with all requirements and criteria provided in this part and shall be based on a risk assessment of the child....
(b) 1. The risk assessment instrument ... shall take into consideration, but need not be limited to, prior history of failure to appear, prior offenses, offenses committed pending adjudication, any unlawful possession of a firearm, theft of a motor vehicle or possession of a stolen motor vehicle, and community control status at the time the child is taken into custody. The risk assessment instrument shall also take into consideration appropriate aggravating and mitigating circumstances.... The risk assessment instrument shall also include any information concerning the child’s history of abuse and neglect.

. The Ninth Circuit withdrew from the program.

. The most recent caseload statistics gathered by the Office of the State Courts Administrator are cause for concern. Those statistics project that on average in 1998 each juvenile judge in Florida will manage a staggering caseload of 3,273 cases, compared to 1,270 cases per judge in the criminal division and 1,357 cases per judge in the civil division. See Office of State Courts Administrator, Certification of Need for Additional Judges 1999 60 (1999).

. See In re Certification of Need for Additional Judges, 728 So.2d 730, 734 (Fla.1999) ("We also recognize the obligation of the Judicial Branch to join with the Executive and Legislative Branches to give priority to our State’s most precious resource-our children.”)