LEWIS, J.
We once again consider whether juvenile detention hearings should be conducted through audio-video devices rather than personal appearances. We have jurisdiction. See Art. V, § 2(a), Fla. Const. As explained below, we decline to adopt the amendment as proposed in 1996, see Amendment to Florida Rule of Juvenile
Procedure 8.100(a), 667 So.2d 196 (Fla. 1996), and repeal the rule as adopted on an interim basis in 1999, see Amendment to Florida Rule of Juvenile Procedure 8.100(a), 753 So.2d 541 (Fla.1999).
Pursuant to Florida Rule of Juvenile Procedure 8.010, no child may be placed in detention without a hearing to determine probable cause and the need for detention. Specifically, rule 8.010 provides in pertinent part:
RULE 8.010 DETENTION HEARING
(a) When Required. No detention order provided for in rule 8.013 shall be entered without a hearing at which all parties shall have an opportunity to be heard on the necessity for the child’s being held in detention....
[[Image here]]
(f) Issues. At this hearing the court shall determine the following:
(1) The existence of probable cause to believe the child has committed a delinquent act. This issue shall be determined in a nonadversary proceeding. The court shall apply the standard of proof necessary for an arrest warrant and its finding may be based upon a sworn complaint, affidavit, deposition under oath, or, if necessary, upon testimony under oath properly recorded.
(2) The need for detention according to the criteria provided by law. In making this determination in addition to the sworn testimony of available witnesses all relevant and material evidence helpful in determining the specific issue, including oral and written reports, may be relied upon to the extent of its probative value, even though it would not be competent at an adjudicatory hearing.
In 1996, at the urging of some trial judges in the Fifth, Ninth, Thirteenth, Seventeenth, and Nineteenth Judicial Cir *472 cuits, we considered a proposed amendment to Florida Rule of Juvenile Procedure 8.100(a), which would provide for these juvenile detention hearings to be conducted with the use of audio-video devices. The proposed amended rule read as follows:[1]
RULE 8.100 GENERAL PROVISIONS FOR HEARINGS
Unless otherwise provided, the following provisions apply to all hearing:
(a) Presence of the Child. The child shall be present unless the court finds that the child’s mental or physical condition is such that a court appearance is not in the child’s best interests, except that the child’s presence may be either in person or by electronic audiovisual device in the discretion of the Court for detention hearings.
In practical operation, the electronic proceeding became mandatory, and not merely an option to be implemented as appropriate. In essence, it was predetermined that a child’s absence was always in the child’s best interests and judicial discretion totally eliminated.
In support of this proposal, some judges have maintained that similar procedures are used for adult first appearance and arraignment hearings; the amendment would eliminate the need for transporting juveniles from detention centers to the courthouse, which would promote safety and provide juveniles more time to attend classes and counseling sessions at the center; and the amendment would eliminate the parading of juveniles through courthouses in handcuffed groups and remedy courtroom outbursts and fights.
Conversely, those opposed[2] to the amendment have asserted that unlike adult first appearances, detention hearings are evidentiary and adversarial in nature, often requiring witness confrontation, challenging of evidence, and review of records and documents. The opponents have also suggested that the proposed procedure would place the juvenile, through the public defender, and state attorney on unequal footing by providing state attorneys the advantage of a physical presence in the courtroom with the judge while placing public defenders and juveniles far away from the judicial officer at the detention center. Finally, the opponents- maintain that the proposed method would deprive juveniles of the opportunity to have meaningful contact with parents, guardians, counselors, and the court.
At the time of the initial proposal, we declined to adopt a permanent rule change as proposed, but authorized the chief judge in each of the above circuits,[3] along with the Sixth Judicial Circuit, to initiate a one-year pilot program which would allow children to be subjected to an audio-video detention hearing process. See Amendment to Florida Rule of Juvenile Procedure 8.100(a), 667 So.2d at 197. At the conclusion of the one-year pilot program, the chief judge of each judicial circuit was to prepare and submit an evaluation report for our consideration. See id.
As we explained in Amendment to Florida Rule of Juvenile Procedure 8.100(a), 753 So.2d at 543, the program received favorable evaluations from those who had initiated, implemented and consistently supported the proposal in the participating *473 circuits. On the other hand, the opponents of the program indicated that they had not been provided sufficient time and opportunity to develop a first-hand familiarity with the program. Thus, we adopted the program on an interim basis based exclusively upon the evaluative data before us at that time, i.e., the reports from the initial and consistent proponents of the rule change located in the participating circuits. Nevertheless, we directed the Juvenile Procedure Rules Committee of The Florida Bar to further study the matter. We also noted that we would revisit the proposed amendment at the expiration of a ninety-day period.
Since our last decision, we have received several comments from independent sources who have now had more time and a greater opportunity to properly evaluate proceedings conducted under the proposed amendment. We have also become aware of additional problems within the participating circuits. Most telling were the comments provided by the Florida Public Defender Association. Independent observations confirmed the fears expressed by all who have strongly and continuously opposed the adoption of the proposed robotic procedure. Specifically, many observed that there was no proper opportunity for meaningful, private communications between the child and the parents or guardians, between the parents or guardians and the public defender at the detention center, and between a public defender at the detention center and a public defender in the courtroom. The mechanical process produced a proceeding where, on many occasions, multiple parties would speak at once, adding to the confusion. At the conclusion of far too many hearings, the child had no comprehension as to what had occurred and was forced to ask the public defender whether he or she was being released or detained. It was also problematic that the public defender at the detention center often had no access to the child’s court file, and there was absolutely no opportunity to approach the bench to discuss private matters or anything that should not have been openly broadcast. Moreover, perhaps because it was difficult for the children to see, hear, and understand what was taking place, the youth did not behave as those participating in person in a courtroom; that is, the hearings totally lacked the dignity, decorum, and respect one would anticipate in a personal appearance before the court. Independent observers suggested certain modifications to the proposed rule in an attempt to produce an acceptable procedure, but such would emasculate the mandatory mechanization contemplated by the proposal and, therefore, the modifications have been viewed as unacceptable to proponents of the proposed rule. Thus, it is clear that the mandatory nature of the practical application assumed the prominent role in the process.
We find the comments of two experienced Florida judges to be especially on point. Senior Circuit Judge Dorothy H. Pate writes:
As you are aware, public awareness and understanding of our courts is poor. Most people coming into court have difficulty in grasping the process. This is magnified with children and youth. The detention decision is one of the most important to be made in delinquency cases — both for the child and society. The value of observation of the child, interaction with family (and sometimes victims) is extremely helpful in making a fair and just decision.
Similarly, Judge Harvey L. Goldstein comments:
There is no doubt that video hearings are more efficient and less costly than personal appearances. Video hearings make the conveyor belt move faster. *474 They offer more control and help eliminate time consuming and sometimes useless speech....
To me video hearings are like mega high schools with 3,000 to 4,000 students and classes of 30 to 40 students. Personal appearance hearings are more like small high schools with classes of 20 or less. The large high schools are more efficient for the dollar cost. The well-adjusted student, the bright and strong student will do well in a large high school. However, the not so bright, less confident and weak student will not do well at a large high school. I believe the same holds true for juveniles at video hearings.
To me, most juveniles at video first appearance hearings appear almost like zombies. Conversation between a parent and a teenager under normal conditions when there is conflict is difficult. Conversation via a video screen with a juvenile who is in detention is extremely difficult and problematic.
Although we have repeatedly recognized that there is a place in Florida’s courtrooms for technological innovations,[4] the observations now before us expose the frailties of a system that seeks to “elevate the process above substance.” 753 So.2d at 545 (Lewis, J. dissenting). Implementing technological devices simply because they are available, while swift and expeditious, causes a misdirection of our objectives; our children must never be shortchanged in the name of technological advancement. We strongly believe that the measure of a society can be found not in the words spoken about its youth, but in the action and methods utilized in its relationships with its youth.
We emphasize that the proponents of this rule are not to be faulted for their attempt to initiate a system they believed would be beneficial, and, to be sure, there were some benefits noted under the proposed amendment. In fact, we commend the proponents for their obvious desire to serve our youth. However, our youth must never take a second position to institutional convenience and economy.
Moreover, “[i]f fights, disruption, and the spectacle of parades in handcuffs and shackles are the ills to be corrected, then we should correct and change these disgraceful problems rather than avoiding correction by attempting to implement robotic justice.” Id. at 546 (Lewis J., dissenting). Inserting a camera and monitor into a judicial proceeding is a sure way to send the wrong message to the youth of Florida.
The detention hearing is a critical stage in the juvenile process which requires an honest judicial assessment of an individual and family in close temporal proximity to an alleged deviant event. At a time such as this, a great deal of information is exchanged by not only the spoken word, but also by personal contact and observations inherent in the personal interaction generated by a personal appearance, qualities missing when an event is perceived only through the limitations of the lens of a camera or television monitor. Most assuredly, the impact of the detention hearing has far reaching tentacles for all concerned, the individual youth, the family, and the public in general. The decision with *475 regard to detention should be made in person, not by long distance.
Id. (Lewis, J., dissenting).
Furthermore, we simply cannot accept the dissenting views that the entire system must defer to the views of the proponents of the mandatory video process simply because there are many other judges and actual participants in the process who are also well-intentioned and firmly opposed to the “Big Brother” mandatory approach. Neither do we agree with the dissenting opinions that our decision today evinces any lack of confidence in circuit court judges. In fact, it is the mandatory nature of this absolute rule which divests trial judges of any sort of discretion with respect to how these hearings should be conducted that denies confidence in individual judges. The issue here is not the integrity of individual judges for it is the compulsory approach advanced by the proponents that belies and negates the integrity and judgment of individual judges. The repealed rule forced the implementation of a predetermined policy representing a mechanistic and robotic approach to matters that require individualized care and attention. See id. at 547 (Lewis, J., dissenting). There is no judicious reason for perpetuating an unacceptable model and further subjecting children to manda: tory procedures deemed inappropriate by many directly involved in the juvenile system. In our view, our children deserve more.
In the same vein, we recognize that transportation concerns may create a problem and must be adequately addressed. However, providing solutions for the legitimate transportation concerns of one area should not be, and. need not be, translated into mandatory video appearances to be used as a questionable processing tool to the detriment of children in a different area of this state.
Mindful of the fact that there may be some difficulties in returning to the practice of conducting in-person detention hearings, we set the effective date of the repeal as May 1, 2001. This would, effectively, grant judicial circuits ten months from our initial decision within which to cease conducting audio-visual detention hearings. We emphasize that this grace period is not to be interpreted as diluting, in any respect, our reasoning in this opinion. The extension is simply to guarantee that all aspects of the system are in place for proper operation. We further caution that this extension of time should be taken advantage of only in those cases where the impact of this decision, as it relates to the transportation of the juveniles for instance, is such that the extension is absolutely and unavoidably necessary.
In sum, “Florida’s oft-repeated pledge that ‘our children come first’ cannot ring hollow in — of all places — our halls of justice.” Id. at 545. Not simply allowing, but mandating that children attend detention hearings conducted through an audiovisual device steers us towards a sterile environment of T.V. chamber justice, and away from a system where children are aptly treated as society’s most precious resource. It is time that we understand that these youths are individuals and require sufficient resources if we are to expect a brighter tomorrow. We recognize our children may be familiar with computers, television, and related technology; however, such familiarity does not' decrease the need for personal interaction and may very well be one of many complex reasons we should require more personal attention to our youth. Personalized attention and plans are necessary to properly address the multiple and complex *476 problems facing today’s children.[5] The juveniles that become involved in this process have, at some point, allegedly failed to make the right decision and we must not compound the problem by subjecting them to a system that has lost its humanity and become an emotional wasteland. In our view, solutions to many of the troubling issues in our criminal justice system may be found in proper, early, individualized intervention in a young life and not in the mechanical and robotic processing of numbers. Respect for the individual begets respect while we fear coldness and sterility may breed contempt.
It is so ordered.
SHAW, ANSTEAD, PARIENTE and QUINCE, JJ., concur.
WELLS, C.J., dissents with an opinion, in which HARDING, J., concurs.
HARDING, J., dissents with an opinion, in which WELLS, C.J., concurs.

. Underscoring indicates proposed language.

. Opponents of the amendment include the Juvenile Court Rules Committee of The Florida Bar, the Juvenile Justice Committee of the Florida Public Defenders Association, and individual judges and public defenders.

.The Ninth Judicial Circuit withdrew from participation in the program.

. We continue to recognize the importance of technology in all judicial efforts and we commend those who work to improve the quality of justice in our juvenile system. However, with a state having such diverse needs, the one-size-fits-all mandatory approach presented here is an unyielding position which totally eliminates human interaction and discretion even when the best interest of a child may be sacrificed.

. We make clear that we are not forever foreclosing the possibility that audio-visual hearings could be conducted in such a manner which would not be detrimental to juvenile offenders. The problem with the interim rule which we today repeal is that it seeks to implement a one-size-fits-all system in a state as richly diverse in need as ours. Because, however, we feel a profound commitment to the sound administration of justice and to the rights of juvenile offenders, we refer this matter for consideration to the Children’s Court Improvement Committee. In so doing, we request that the Committee receive information from all sources and reach a determination as to whether there is enough common ground to draft a rule that would truly be in the best interest of these young offenders.