# Supreme Court of Florida

———————

No. SC16-1852

———————

**JOHN DOE,**
Petitioners,

vs.

**STATE OF FLORIDA,**
Respondent.

[May 11, 2017]

PARIENTE, J.

At the heart of this case is the right of an individual to have a judicial officer physically present at hearings held to determine whether the individual may be involuntarily committed to a mental health facility or hospital pursuant to section 394.467, Florida Statutes (2016) ("the Baker Act"). Doe v. State, 210 So. 3d 154 (Fla. 2d DCA 2016).[1] Although the panel of the Second District Court of Appeal

---

1. In its decision, the Second District Court of Appeal certified the following question of great public importance:

> DOES A JUDICIAL OFFICER HAVE AN EXISTING INDISPUTABLE LEGAL DUTY TO PRESIDE OVER SECTION 394.467 HEARINGS IN PERSON?

expressed serious concerns over the practice, which a judicial officer instituted via e-mail, providing for the remote appearance of judicial officers at Baker Act hearings, only the dissent explained that this practice violates the basic constitutional principle that "a judge's physical presence is simply a constituent component of his or her ministerial duty to preside over a trial or evidentiary hearing." Id. at 168 (Lucas, J., dissenting). We agree that the process instituted in the Twentieth Judicial Circuit by a single judicial officer denied Petitioners their

---

Doe, 210 So. 3d at 159. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

right to have a judicial officer physically present at their Baker Act commitment hearings.[2] Accordingly, we quash the Second District's decision below.[3]

## FACTS AND PROCEDURAL BACKGROUND

The case currently before this Court was initiated before the Second District through the filing of fifteen petitions by individuals seeking some form of relief in the court from an ad hoc procedure instituted by an individual county court judge via an e-mail, which stated: "Per Judge Swett he will be doing Baker Acts beginning this Friday via Polycom. Thank You." The procedure, instituted

---

2. Disability Rights of Florida, Inc. filed an amicus brief on behalf of Petitioners, contending that the use of videoconferencing equipment in Baker Act hearings is not only against longstanding judicial policy but also would be injurious to the condition of many patients. Disability Rights of Florida, Inc. is the designated voice for those with mental illness in Florida and has a longstanding interest in ensuring that the involuntary commitment procedures are fair and protect the rights of individuals with mental illness.

Additionally, the Honorable Jeffery J. Colbath, Chief Judge of the Fifteenth Judicial Circuit, filed an amicus brief on behalf of the State, arguing that the use of videoconferencing equipment was within the discretion of the trial judge and explaining the pilot program for the use of videoconferencing equipment during Baker Act hearings currently being implemented in the Fifteenth Judicial Circuit. Judge Colbath filed his amicus brief, in part, to advise this Court of the significant impact that an affirmative answer to the certified question would have on the administration of not only the Fifteenth Judicial Circuit, but on all circuit courts throughout the state, and to advocate for the adoption of rules of procedure to govern the remote appearance of judicial officers in future proceedings.

3. Initially, this Court denied Petitioners' Motion to Stay the proceedings below. However, after hearing oral argument, this Court vacated its earlier order and stayed the proceedings.

without notice, would allow the county court judge to preside over involuntary commitment hearings remotely.[4]  Very little factual or procedural background exists because, as the Second District explained:

> At the time the petitions at issue were filed with this court, the petitioners were awaiting their Baker Act hearings.  The petitioners and the State, as respondent in these cases, have provided this court with the recent history giving rise to these petitions.  The judge and magistrate currently assigned to preside over Baker Act hearings in Lee County had recently announced, via e-mail, that they would no longer be commuting to the receiving facilities to hold the statutorily required hearing in person.  Instead, the judicial officers would preside remotely from the courthouse via videoconference equipment while the patients, witnesses, and attorneys would continue to be physically present at the receiving facility.  It is this new procedure that the petitioners challenge, asking this court to require the judicial officers to be physically present for the hearings "as required by law."

Id. at 156. (majority) Ultimately, the Second District held:

> In sum, while we question the wisdom of holding these hearings remotely, we conclude that the decision to preside over a Baker Act hearing remotely via videoconference equipment is within the discretion of the court.  There is no ministerial, indisputable legal duty clearly established in the law which requires judicial officers presiding over involuntary inpatient placement hearings pursuant to section 394.467 to be physically present with the patients, witnesses, and attorneys.

Id. at 159.

---

4. Circuit courts have jurisdiction over Baker Act hearings, however they are permitted by statute to either appoint a magistrate to preside over the hearings, see § 394.467(6)(a)3., Fla. Stat. (2016), or "[t]he chief judge of a circuit may authorize a county court judge to order emergency hospitalizations pursuant to part I of chapter 394 in the absence from the county of the circuit judge." § 26.012(4), Fla. Stat. (2016).

Judge Wallace wrote a concurring opinion, in which he expressed his belief that the manner in which the trial judge exercised his authority to conduct involuntary placement hearings was unwarranted, and conducting such hearings remotely is inappropriate and ill-advised. Id. (Wallace, J., concurring). He also suggested that the appropriate rules committees of The Florida Bar promptly draft and submit rules delineating the types of proceedings that a judge may conduct remotely by videoconference and those that judges may not. Id. (Wallace, J., concurring). Initially, Judge Wallace took issue with the implementation of videoconferencing through the use of e-mail, rather than through an administrative order from the Chief Judge. Id. at 160-61 (Wallace, J., concurring). Judge Wallace argued that conducting Baker Act hearings remotely was ill-advised for three reasons: (1) potential difficulties, including equipment malfunctions and the inability of counsel to approach the bench for private conversations; (2) the circuit court disregarded the opinion of a subcommittee appointed by this Court in 1997 to conduct a comprehensive study on the administration of the Baker Act and its impact on patients, in which it recommended against conducting such hearings via videoconference; and (3) the circuit court disregarded an attempt by this Court to use a similar procedure for juvenile hearings that ultimately failed. Id. at 163-67 (Wallace, J., concurring).

Additionally, Judge Lucas wrote a dissenting opinion, arguing both that judicial officers have a ministerial duty to preside over Baker Act hearings in person and that the majority improperly looked to procedural rules as a potential basis for granting mandamus relief.  Id. at 166-67 (Lucas, J., dissenting).  As to the first point, Judge Lucas reasoned:

> In gleaning the extent of the judicial duty at issue here, we can, and should, look to the constitutional right of access to courts, precedent that expressly tethers a judge's physical presence to a constitutional right, and the entirety of tradition and history.  These bedrock principles, drawn together, fill the dearth of authority that my colleague, Judge Wallace, apprehends.  But if there is any silence in the law on this issue, it must surely be ascribed to the fact that a judge or magistrate's personal attendance at trial has been the assumed norm for as long as there have been courts and judges.  In my view, a judge's physical presence is simply a constituent component of his or her ministerial duty to preside over a trial or evidentiary hearing.

Id. at 168.

### THE BAKER ACT

This case involves proceedings used to involuntarily commit mentally ill individuals under section 394.467, Florida Statutes.  Section 394.467, also known as the Baker Act, governs the involuntary inpatient placement of persons with mental illness.[5]  Subsection (1) lays out specific criteria the State must prove to order the involuntary inpatient placement of an individual, including that the

---

5. This Court has not currently promulgated procedural rules specifically governing Baker Act proceedings.

- 6 -

individual has either refused or is unable to consent to voluntary treatment, that the individual is either incapable of surviving alone or that there is a substantial likelihood that in the near future the individual will inflict serious bodily harm on himself or herself or others, and that all available less-restrictive treatment alternatives that would offer an opportunity for improvement of the individual's condition have been judged inappropriate. § 394.467(1)(a)-(b), Fla. Stat. (2016).

The Baker Act also requires an evidentiary hearing to be conducted for involuntary inpatient placement. See § 394.467(2), (6). Recognizing the need for immediate action, the statute specifies that "[t]he court shall hold the hearing on involuntary inpatient placement within 5 court working days, unless a continuance is granted." § 394.467(6)(a)1. Additionally, "[w]ithin 1 court working day after the filing of a petition for involuntary inpatient placement, the court shall appoint the public defender to represent the person who is the subject of the petition, unless the person is otherwise represented by counsel." § 394.467(4). The statute requires, "Except for good cause documented in the court file, the hearing must be held in the county or the facility, as appropriate, where the patient is located, must be as convenient to the patient as is consistent with orderly procedure, and shall be conducted in physical settings not likely to be injurious to the patient's condition." § 394.467(6)(a)2. (emphasis added). Finally, the statute allows for a magistrate, rather than a judge, to preside at the hearing:

The court may appoint a magistrate to preside at the hearing. One of the professionals who executed the petition for involuntary inpatient placement certificate shall be a witness. The patient and the patient's guardian or representative shall be informed by the court of the right to an independent expert examination. If the patient cannot afford such an examination, the court shall ensure that one is provided, as otherwise provided for by law. The independent expert's report is confidential and not discoverable, unless the expert is to be called as a witness for the patient at the hearing. The testimony in the hearing must be given under oath, and the proceedings must be recorded. The patient may refuse to testify at the hearing.

§ 394.467(6)(a)3.[6]

It is clear that the Legislature recognized that individuals subject to the Baker Act are among the most vulnerable in our society. The Baker Act has built-in safeguards, including the requirement that hearings be conducted at the institution where the patient is placed and in a manner not likely to be injurious to the patient's condition.

The State is correct that section 394.467 does not specifically require that Baker Act hearings be presided over by a judicial officer who is physically present. However, it is not unsurprising that the statute does not include such a requirement

---

6. The magistrate's findings are subject to judicial review. See In re Drummond, 69 So. 3d 1054, 1056-57 (Fla. 2d DCA 2011). Again, there are no separate rules regarding the procedure for filing exceptions to a magistrate's Baker Act findings unlike in other contexts under the Florida Rules of Civil Procedure, the Florida Family Law Rules of Procedure, and the Florida Rules of Juvenile Procedure. See Fla. R. Civ. P. 1.490(i) (requiring that parties file exceptions to the magistrate's report within ten days after it is served); Fla. Fam. L. R. P. 12.490(f) (same); Fla. R. Juv. P. 8.257(f) (same).

because judicial officers have always presided over evidentiary hearings in person. Additionally, the rights of the patients subject to involuntary commitment hearings are not limited to the protections provided for in the statute. Rather, in light of the serious deprivation of liberty associated with involuntary commitment hearings, important constitutional rights also govern these hearings.

## CURRENT STATE OF THE LAW

"[A] deprivation of liberty by commitment to a mental institution cannot be accomplished without due process of law." Jordan v. State, 597 So. 2d 352, 353 (Fla. 1st DCA 1992) (citing O'Connor v. Donaldson, 422 U.S. 563, 580 (1975); Shuman v. State, 358 So. 2d 1333 (Fla. 1978); In re Beverly, 342 So. 2d 481 (Fla. 1977)). "The gravity of the matters considered at a Baker Act hearing requires the trial court to conduct the proceedings in a fair and neutral manner." Id. Moreover, "[t]hose whom the state seeks to involuntarily commit to a mental institution are entitled to the protection of our Constitutions, as are those incarcerated in our correctional institutions." Shuman, 358 So. 2d at 1335. "Because involuntary commitment is a substantial deprivation of liberty at which fundamental due process protections must attach, the patient cannot be denied the right to be present, to be represented by counsel, and to be heard." Ibur v. State, 765 So. 2d 275, 276 (Fla. 1st DCA 2000).

Individuals subject to Baker Act commitment hearings are entitled to the strict enforcement of their fundamental due process rights. These rights include: the right to an attorney, the right to testify, present evidence, and confront and cross examine witnesses, and the right to be present at the commitment hearing. See id. Courts must be especially careful to protect those due process rights when dealing with a vulnerable segment of the population and making a decision that ultimately results in a "massive curtailment of liberty." Humphrey v. Cady, 405 U.S. 504, 509 (1972).

The right to be present at an involuntary commitment hearing is a fundamental due process right. Mouliom v. Ne. Fla. State Hosp., 128 So. 3d 979, 981 (Fla. 1st DCA 2014). While a patient may waive the right to be personally present, a court must certify that the waiver is knowing, intelligent, and voluntary. Id. The requirement of physical presence, which is not disputed by any of the parties, would be meaningless if the judicial officer, or the finder of fact and ultimate decision-maker, is not also present in the hearing room.

Convenience of the judicial officer is insufficient to justify the violation of an individual's constitutional rights. Indeed, the Amicus Brief of the Fifteenth Judicial Circuit offers no reason other than expediency for desiring a pilot program allowing for the remote appearance of judicial officers via videoconferencing technology. By contrast, the Amicus, Disability Rights of Florida, Inc., offers

compelling argument as to why the remote appearance of judicial officers is harmful to patients and ultimately does not satisfy their right to be physically present and aware of the proceedings at the Baker Act hearing:

> Utilization of videoconferencing may depersonalize the proceedings and may heighten a patient's perception that the proceeding was unfair. In addition, the fact that Baker Act hearings are the only adjudicatory hearings that are required to be done by video conference sends a message to the participants that these proceeding are not worthy of the court's time. A patient's perception of the fairness of these hearing is not just an esoteric concern. It may have an impact on their treatment and conduct. See Morrissey v. Brewer, 408 U.S. 471, 484, 92 S. Ct. 2593, 2602, 33 L. Ed. 2d 484 (1972) (noting that "society has a further interest in treating the parolee with basic fairness: fair treatment in parole revocations will enhance the chance of rehabilitation by avoiding reactions to arbitrariness.").

Br. of Amicus Curiae, Disability Rights Florida, Inc. (Dec. 12, 2016) at 14. Indeed, a report from the Florida Supreme Court Commission on Fairness also recommended that such involuntary inpatient placement hearings be conducted in as formal a manner as possible, in an effort to ensure that the patient is aware of the proceeding and its possible consequences, stating:

> [T]he chief judge of each circuit court [should] require involuntary placement hearings held at mental health receiving facilities to be conducted in a room that is set up in the manner of a courtroom. If possible, that room should not be used for any other patient purposes. The presiding officer should wear a robe. United States and Florida flags should be present. Formal courtroom decorum should be observed. Patients should be dressed in street clothing. Food, drink, and side conversations should be prohibited. The presiding officer, state attorney, public defender, and other participants should introduce

- 11 -

themselves prior to each case.  Moreover, rules of evidence and procedure should be observed.

Florida Supreme Court Comm'n on Fairness, Judicial Administration of the Baker Act and Its Effect on Florida's Elders; Report & Recommendations of the Subcommittee on Case Administration, 31-32 (1999).

Additionally, longstanding traditions compel the personal attendance of judicial officers at trials and evidentiary hearings over which they preside.  There is no explicit rule or constitutional right requiring a judicial officer's physical presence at Baker Act proceedings—likely because judicial officers have always, until the recent advent of technology, been required to be physically present in the courtroom to preside over cases which are assigned to them.  Moreover, as this Court explained in Brown v. State, 538 So. 2d 833 (Fla. 1989), "the presence of a judge during trial is a fundamental right."  Id. at 835.  Though this Court has not explicitly stated that judicial presence is required at evidentiary hearings, unless the parties agree otherwise, longstanding tradition and notions of justice compel such a requirement.  A judicial officer should be physically present to preside over any matter that could lead to the "massive curtailment of [an individual's] liberty." Humphrey, 405 U.S at 509.

As Petitioners note, the remote presence of judicial officers could likely be injurious to the patient's condition.  As Disability Rights of Florida, Inc., explains:

- 12 -

This consideration of the patient's needs in the setting of the hearing is unique to commitment hearings. The "physical setting" of the hearing undoubtedly includes such things as whether the judge is physically present at the hearing or participating by a television screen. The use of videoconferencing carries a great potential for harming the patient's condition. There is substantial evidence that use of videoconferencing will cause patients confusion about the proceeding, discourage participation, cause exacerbation of symptoms, and may have significant ramifications regarding a patient's willingness to accept treatment once committed. All of these outcomes could negatively affect this vulnerable population.

Br. of Amicus Curiae, Disability Rights Florida, Inc. (Dec. 12, 2016) at 11. Although the State and the Amicus, the Honorable Jeffery J. Colbath, cite to the improvement in video technology and practices in other jurisdictions that use video hearings, our concern continues to be the effect of remote videoconferencing—essentially judicial appearance by television—on the patient.

Moreover, it is no solution to the problem to allow a patient to be brought to the courthouse if he or she objects, as the Fifteenth Circuit has proposed in its pilot program. The Legislature has expressed a clear preference in section 394.467 that hearings be conducted at the patient's facility in a manner that would not likely be injurious to the patient's condition. Moreover, as was mentioned at oral argument, oftentimes when mentally ill patients are transported to the circuit court, they are transported and treated via the same process and procedures used for criminal inmates. Judicial expediency will never justify such treatment of some of our State's most vulnerable citizens.

Turning to the applicable Rule of Judicial Administration, specifically,

Florida Rule of Judicial Administration 2.530 states:

> **(a)  Definition**.  Communication equipment means a conference telephone or other electronic device that permits all those appearing or participating to hear and speak to each other, provided that all conversation of all parties is audible to all persons present.
>
> **(b)  Use by All Parties.**  A county or circuit court judge may, upon the court's own motion or upon the written request of a party, direct that communication equipment be used for a motion hearing, pretrial conference, or a status conference.  A judge must give notice to the parties and consider any objections they may have to the use of communication equipment before directing that communication equipment be used.  The decision to use communication equipment over the objection of parties will be in the sound discretion of the trial court, except as noted below.
>
> **(c)  Use Only by Requesting Party.**  A county or circuit court judge may, upon the written request of a party upon reasonable notice to all other parties, permit a requesting party to participate through communication equipment in a scheduled motion hearing; however, any such request (except in criminal, juvenile, and appellate proceedings) must be granted, absent a showing of good cause to deny the same, where the hearing is set for not longer than 15 minutes.
>
> **(d)  Testimony.**
>
> (1) <u>Generally.</u>  A county or circuit court judge, general magistrate, special magistrate, or hearing officer may allow testimony to be taken through communication equipment if all parties consent or if permitted by another applicable rule of procedure.
>
> (2) <u>Procedure.</u>  Any party desiring to present testimony through communication equipment shall, prior to the hearing or trial at which the testimony is to be presented, contact all parties to determine whether each party consents to this form of testimony.  The party seeking to present the testimony shall move for permission to present testimony through communication equipment, which motion shall set forth good cause as to why the testimony should be allowed in this form.
>
> (3) <u>Oath.</u>  Testimony may be taken through communication equipment only if a notary public or other person authorized to administer oaths in the witness's jurisdiction is present with the

witness and administers the oath consistent with the laws of the jurisdiction.

(4) <u>Confrontation Rights.</u>  In juvenile and criminal proceedings the defendant must make an informed waiver of any confrontation rights that may be abridged by the use of communication equipment.

(5) <u>Video Testimony.</u>  If the testimony to be presented utilizes video conferencing or comparable two-way visual capabilities, the court in its discretion may modify the procedures set forth in this rule to accommodate the technology utilized.

Rule 2.530 was adopted by this Court in 1985.  <u>See</u> <u>The Fla. Bar Re: Fla. R. Jud. Admin.</u>, 462 So. 2d 444 (Fla. 1985).  When adopting the rule, this Court stated:

The rule is intended to formally adopt standard procedures for using communication equipment which we are advised is currently being informally used in many courts within the state.  Because we saw merit and urgency in the proposal but did not wish to adopt it as an emergency rule without the advice of The Florida Bar and interested individuals, we referred the proposal to the Committee for expeditious consideration.  We have since received input from that Committee, from The Florida Bar Board of Governors, from circuit and county judges, and from other interested individuals.  There is general agreement that such a rule should be adopted but some disagreement as to the scope and content of the rule.  We have carefully considered the various comments and recommendations submitted to us and concluded that we should adopt the appended rule.

<u>Id.</u> at 445.

The State contends that neither this rule nor any other rule of law that currently exists, governs the remote appearance of judicial officers at all hearings throughout the state, not just Baker Act hearings.  In fact, by the State's reasoning,

- 15 -

it is within the judicial officer's discretion whether to preside over criminal trials remotely. The State's arguments are without merit.

Rule 2.530(d)(1) speaks directly to the issue at hand because it explicitly "allow[s] testimony to be taken through communication equipment if all parties consent or if permitted by another applicable rule of procedure." Further, Rule 2.530(b) only allows courts to "direct that communication equipment be used for a motion hearing, pretrial conference, or a status conference." The State contends that all that is required by this rule is that the patient and the rest of the participants to the hearing, including the witnesses, are physically present in the same room. However, the opposite is true. When a witness is not in the same room as the person who will ultimately be deciding the outcome of the case, and to whom the testimony is directed, in this case the judge or magistrate, regardless of where the rest of the participants in the hearing or trial are, the witness is testifying through communication equipment. Such testimony is specifically disallowed under the rule, unless all of the parties consent.

It is also clear that, in adopting Rule 2.530, the Court intended to permit the use of communication equipment, over the objection of the parties, only in the three enumerated instances. Specifically, this Court stated: "There is general agreement that such a rule should be adopted but some disagreement as to the scope and content of the rule. We have carefully considered the various comments

and recommendations submitted to us and concluded that we should adopt the appended rule." The Fla. Bar Re: Fla. R. Jud. Admin., 462 So. 2d at 445. Thus, this Court made clear that it was presented with various options as to how broadly the rule should be written, but ultimately decided to limit the use of communication equipment to only three instances. Additionally, this Court has since not amended the rule to expand these instances. See In re Amend. to the Fla. R. Jud. Admin., 73 So. 3d 210 (Fla. 2011); Amend. To Family Law R. of P. 12.650 (override of family violence indicator) & Fla. R. Jud. Admin. 2.071 (use of communication equipment), 766 So. 2d 999 (Fla. 2009); In re Amend. to the Fla. R. Jud. Admin. (Two-Year Cycle), 915 So. 2d 157 (Fla. 2005); Amend. to the Fla. R. Jud. Admin., 780 So. 2d 819 (Fla. 2000).

**THIS COURT'S PREVIOUS EXAMINATION OF THE USE OF REMOTE CONFERENCING IN JUDICIAL HEARINGS**

This Court previously considered the efficacy of using videoconferencing technology with another group of vulnerable individuals—juveniles. As noted by Judge Wallace's concurring opinion, in 1999, this Court adopted Rule of Juvenile Procedure 8.100(a), allowing on an interim basis the remote appearance of judges for juvenile detention hearings. See Amend. to Fla. R. Juv. P. 8.100(a), 753 So. 2d 541 (Fla. 1999). The procedure was not created in each circuit on an ad hoc basis. Rather, the rule was first proposed in 1996, adopted on an interim basis in 1999, and finally repealed in 2001, all by action from this Court, with input from the

- 17 -

legal community directly impacted by the rule.  See Amend. to Fla. R. Juv. P. 8.100(a), 796 So. 2d 470, 471 (Fla. 2001).  When considering the rule, this Court authorized chief judges in various circuits to conduct one-year pilot programs and required that each Chief Judge send a report to the Court detailing the positive and negative impacts of the proposal at the end of the year.  Id. at 472.  After reviewing the results of the pilot program, as well as looking to the comments of several independent sources about the positive and negative effects of the program, this Court ultimately decided to repeal the rule, concluding:

> In sum, "Florida's oft-repeated pledge that 'our children come first' cannot ring hollow in—of all places—our halls of justice." [Amend. to Fla. R. Juv. p. 8.100(a), 753 So. 2d] at 545.  Not simply allowing, but mandating that children attend detention hearings conducted through an audio-visual device steers us towards a sterile environment of T.V. chamber justice, and away from a system where children are aptly treated as society's most precious resource.  It is time that we understand that these youths are individuals and require sufficient resources if we are to expect a brighter tomorrow.  We recognize our children may be familiar with computers, television, and related technology; however, such familiarity does not decrease the need for personal interaction and may very well be one of many complex reasons we should require more personal attention to our youth.  Personalized attention and plans are necessary to properly address the multiple and complex problems facing today's children. The juveniles that become involved in this process have, at some point, allegedly failed to make the right decision and we must not compound the problem by subjecting them to a system that has lost its humanity and become an emotional wasteland.  In our view, solutions to many of the troubling issues in our criminal justice system may be found in proper, early, individualized intervention in a young life and not in the mechanical and robotic processing of numbers.  Respect for the individual begets respect while we fear coldness and sterility may breed contempt.

- 18 -

Id. at 475-76 (footnote omitted). It is evident that the special status of juveniles within our society was the driving force behind this Court's ultimate decision not to adopt Rule 8.100(a) on a permanent basis.

Moreover, this Court has previously examined the efficacy of the remote appearance of judicial officers in Baker Act proceedings. As Judge Wallace explained in his concurring opinion:

> A subcommittee appointed by the Florida Supreme Court in 1997 conducted a comprehensive study of the administration of the Baker Act and its impact on patients, particularly Florida's elderly population. The subcommittee released its report on December 28, 1999 (the Report).
> . . . .
> In the Report, the subcommittee addressed the conduct of involuntary placement hearings by video. The subcommittee noted that when involuntary placement hearings are held in receiving facilities—as is the case here—patients frequently do not understand that a formal court hearing is taking place. Report at 19. The subcommittee devoted a separate section of the Report to a consideration of the effects of conducting involuntary placement hearings on a population of vulnerable patients by video. Id. at 31-32.

Doe, 210 So. 3d at 163-64 (Wallace, J., concurring) (citation omitted). Indeed, as Judge Wallace recognized, the Subcommittee noted the following evidence regarding the negative effects of conducting Baker Act hearings remotely:

> Martha Lenderman pointed out that some individuals' mental health problems include symptoms of paranoia. These persons may react negatively to video hearings. Some individuals with mental illnesses may be too confused to understand a procedure involving a video hearing. Further, the presiding officer may be limited in observing the situation when confined to viewing only what a camera

- 19 -

> is focused on. Ms. Lenderman warned that video be used with caution, if at all, for involuntary placement hearings.
>
>     Vince Smith, of the Mental Health Program Office in the Department of Children and Families, was concerned that use of video may increase the number of individuals who decline to participate in their involuntary placement hearings. Winifred Sharp, a Judge on the Fifth District Court of Appeal, observed that it would be very difficult to make a video proceeding look or feel like a formal court hearing, and therefore the chance that a patient might not understand a court proceeding is occurring would continue to present a challenge.

Id. at 164. Much like the present case, the only evidence offered to the Subcommittee in favor of the remote appearance of judicial officers was "that video hearings may be a convenient and less costly alternative for involuntary placement hearings." Florida Supreme Court Comm'n on Fairness, Judicial Administration of the Baker Act and Its Effect on Florida's Elders; Report & Recommendations of the Subcommittee on Case Administration, 31 (1999). Ultimately the Subcommittee "strongly recommend[ed] against the use of video for involuntary placement hearings." Id. at 32.

## THIS CASE

In the present case arising out of the Twentieth Judicial Circuit, a single county court judge, in an e-mail—which stated in its entirety "Per Judge Swett he will be doing Baker Acts beginning this Friday via Polycom. Thank You."— declared a new policy that Baker Act hearings would be conducted remotely via videoconferencing equipment. There is no evidence in the record, other than a suggestion for judicial efficiency and cost savings from the Amicus of the

- 20 -

Fifteenth Judicial Circuit, as to why such a proceeding is necessary in Lee County. Further, Petitioners in this action have all objected to the use of videoconferencing equipment for Baker Act hearings in their respective cases. Based upon the above analysis, and because Petitioners have objected to the use of such equipment and have not waived their physical presence at their Baker Act proceedings, the judicial officers presiding over their hearings are required to appear in person, in "physical settings not likely to be injurious to the patient's condition." § 394.467(6)(a)2., Fla. Stat.

Moreover, it is troubling that such an important policy decision, fraught with real life consequences for some of our society's most vulnerable citizens, was handed down in a one sentence e-mail without any real explanation or judicial avenue for challenge. Rule 2.530 was adopted in an attempt to stop such ad hoc use of communications equipment throughout the circuit courts. See The Fla. Bar Re: Fla. R. Jud. Admin., 462 So. 2d at 445 ("The rule is intended to formally adopt standard procedures for using communication equipment which we are advised is currently being informally used in many courts within the state."). Should courts wish to implement and utilize new technology, then, at the very least, policies and procedures for such use should be adopted through a formal administrative order, subject to certiorari review in the appellate courts. See Fla. R. App. P. 9.100(c)

(stating that where no written orders have been rendered, the appellate courts lack jurisdiction to consider petitions for writs of certiorari).

## CONCLUSION

In sum, Petitioners, as well as all individuals subject to Baker Act hearings, have a right to have a judicial officer physically present at their Baker Act commitment hearing, subject only to their consent to the contrary. Likewise, a judicial officer's physical presence over such hearings is a constituent component of his or her ministerial duty to preside over a trial or evidentiary hearing. Individuals subject to Baker Act commitment proceedings are individuals who likely have a serious mental illness, and they are among the State's most vulnerable citizens. The language in the Baker Act reflects the Legislature's acknowledgment that these individuals are entitled to heightened consideration regarding the manner in which the hearing will be conducted. See § 394.467(6)(a), Fla. Stat. Such heightened consideration rightfully includes the physical presence of judicial officers in the hearing room. Accordingly, the decision of the Second District below in Doe is quashed and the proceedings are remanded to the Second District for instructions not inconsistent with this opinion.

It is so ordered.

LABARGA, C.J., and LEWIS, QUINCE, and LAWSON, JJ., concur.
CANADY, J., concurs in result with an opinion, in which POLSTON, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

CANADY, J., concurring in result.

I agree that the decision of the Second District Court of Appeal should be quashed because the practice at issue here is in violation of the trial court's indisputable legal duty under Florida Rule of Judicial Administration 2.530(d)(1). That rule precludes the taking of testimony through communication equipment without the consent of all the parties in the absence of some other rule authorization. Here, there was no consent and no other rule authorization for the trial court's conduct.

I therefore would rephrase the certified question as follows:

Does Florida Rule of Judicial Administration 2.530(d)(1) require that a judge be physically present to preside over involuntary inpatient placement hearings under section 394.467, Florida Statutes (2016), unless the parties agree that the judge may participate by way of communication equipment?

And I would answer the rephrased question in the affirmative.

In my view, the issue presented by this case is readily resolved by the text of Rule 2.530(d)(1).

POLSTON, J., concurs.

Application for Review of the Decision of the District Court of Appeal – Certified Great Public Importance

    Second District - Case No. 2D16-1328

(Lee County)

Howard L. "Rex" Dimmig, II, Public Defender, and Robert A. Young, General Counsel, Tenth Judicial Circuit, Bartow, Florida,

for Petitioners

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; and Caroline Johnson Levine, Assistant Attorney General, Tampa, Florida,

for Respondent

Peter P. Sleasman and Kristen Cooley Lentz of Disability Rights Florida, Gainesville, Florida,

for Amicus Curiae Disability Rights Florida

Amy Singer Borman, General Counsel, Fifteenth Judicial Circuit, West Palm Beach, Florida,

for Amicus Curiae Honorable Jeffrey J. Colbath, Chief Judge of the Fifteenth Judicial Circuit