**Thomas W. ROBINSON, a/k/a Thomas Hawkins, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 8599.**

District of Columbia Court of Appeals.

Argued Aug. 14, 1975.

Decided April 2, 1976.

W. Gary Kohlman, Washington, D.C., appointed by this court, for appellant.

Edward C. McGuire, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., John A. Terry, James F. McMullin and Peter K. Mair, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before KERN, NEBEKER and YEAGLEY, Associate Judges.

KERN, Associate Judge:

Appellant was convicted by the court sitting without a jury of carrying a pistol without a license in violation of D.C.Code 1973, § 22–3204. He urges that his conviction be reversed because the trial court erred in refusing to suppress the pistol he alleges a police officer seized from him in violation of the Fourth Amendment.

Appellant's argument in essence is that the police arrested him without a warrant for certain offenses which had *not* been committed in their presence and which were *not* the kinds of misdemeanors for which the police pursuant to D.C.Code 1973, § 23–581, may effect a warrantless

arrest upon probable cause.[1] Accordingly, he argues, since the arrest was unlawful, the seizure from his person immediately thereafter was unlawful under the doctrine of *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and the pistol recovered should have been suppressed as evidence at his trial.

The record reflects that a police officer alone in his cruiser on duty heard over his radio a report of a "man exposing himself and Peeping Tom" at a certain specific address, and then a second report which described the race of the man and the color of his clothing. Thereafter, the officer saw appellant, who matched the description,[2] standing in front of a residential dwelling one block from the address where the offenses had reportedly occurred. The officer observed that there were no other people about in this area of apartments and that when appellant saw the scout car he began to run.[3] The officer, having been informed at morning roll call of burglaries and rapes committed in the area, jumped out of his car and pursued appellant until he caught up with him and stopped him by force.[4] The officer then simultaneously patted each of the front pockets of appellant's coat and advised him of the complaint he had just received. At that point appellant exclaimed, "I got a gun in my back pocket." About an hour had elapsed between the time the officer heard the first report and the time he radioed to the dispatcher that appellant was in custody for carrying a pistol.

We are not persuaded that the officer's action here in giving chase to appellant and forcibly bringing him to a halt constituted an arrest. The Supreme Court recognized in *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968), that an officer may use force to stop momentarily one whom he suspects of criminal activity but about whom he does not have probable cause to arrest. The Court in *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L. Ed.2d 612 (1972), expressly approved a brief stop of a suspicious person by an officer in order to maintain the status quo while obtaining more information.

■ Without attempting to state definitively the precise circumstances that transform a *Terry* stop into an arrest, we view the circumstances in this case as constituting a stop and not an arrest. Appellant was detained for only a moment before he admitted possessing a gun and the officer's frisk was only of his top coat. Thus, the intrusion into his privacy was not great. Moreover, appellant was not transported anywhere, nor was he subjected to a full-blown search, until after he was formally arrested for possession of the gun.

The question then becomes whether, after the stop, the officer was justified in frisking appellant. The Supreme Court has pointed out for guidance in this matter:

> Before he [a police officer] places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so. In the case of the self-protective search for weapons, he must be able to point to particular facts from which he reasonably inferred that the individu-

---

1. The police were investigating a report received from a citizen of a Peeping Tom and a man exposing himself, which constitute violations of D.C.Code 1973, §§ 22–1121(1) and –1112(a), respectively.

2. The individual was described as a "[N]egro male, wearing a red jacket and reddish pants." Appellant is a Negro male and was wearing a red jacket and brown or reddish-brown pants.

3. Another officer, who prepared the PD 163 (offense report) stated therein that appel-

lant, upon seeing the scout car, turned and *walked* in the opposite direction. That officer, when called to testify, could not recall whether appellant had run or walked away from the police car. In any event, both officers' testimony was consistent in indicating that appellant, upon seeing the police cruiser, moved in a direction *away* from it.

4. The officer testified he "might" have had his gun drawn while in pursuit and that he put his hands on appellant to stop him.

al was armed and dangerous. [*Sibron v. State of New York*, 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968).]

■ We conclude, as did the trial court, that the frisk was lawful. Given the facts articulated by the officer of: (1) the radio report of criminal conduct occurring at a specific address stemming from a citizen complaint, (2) the officer's sighting of appellant, who generally matched the description given, within an hour only one block from the location of the reported offense, (3) the evasive reaction of appellant upon seeing the police cruiser, and (4) the nexus between the crimes complained of and the prior crimes known by the sighting officer to have occurred recently in that immediate area,[5] the officer was justified in believing that some criminal activity had just occurred or was in progress and in inferring that the man he had stopped might be armed and dangerous. Hence, the frisk was lawful under *Sibron v. State of New York, supra; Terry v. Ohio, supra;* and *Adams v. Williams, supra.*

Since appellant's admission that he was carrying a pistol did not occur as a result of unlawful police action, the subsequent seizure of the weapon was properly upheld by the trial court.

*Affirmed.*

---

5. While it is, of course, arguable that the character of a voyeur or exposer is essentially passive and withdrawn, whereas the rapist and burglar may be highly aggressive, it is also reasonable for a prudent police officer to act on the possibility that one reported to be a "Peeping Tom" is actually a burglar or rapist in the process of scouting an unlawful entry into the dwelling of his victim.