**Marion BRIDGES, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 10448.**

District of Columbia Court of Appeals.

Argued Dec. 6, 1977.

Decided Oct. 19, 1978.

---

Leroy Nesbitt, Washington, D. C., for appellant.

John W. Polk, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William J. Hardy, Jr. and John L. Gizzarelli, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, GALLAGHER and YEAGLEY, Associate Judges.

GALLAGHER, Associate Judge:

Appellant was tried by a jury and convicted of first-degree burglary while armed, armed rape, first-degree burglary and petit larceny.[1] He contends on appeal that the trial court erred in refusing to suppress

1. D.C.Code 1973, §§ 22–1801(a), –3202; –2801, –3202; –1801(a); –2202, respectively.

certain tangible evidence and an incriminating statement made to police.

This case arose out of two separate offenses occurring on the morning of March 27, 1974. Within a period of four hours, an intruder had broken into two homes in southeast Washington, stolen cigarettes from one house, and raped a woman at gunpoint in the other. Similar appearing footprints were found in the vicinity of both homes and police made a composite drawing showing the size and features of the shoes that had made the footprints. Copies of the drawing were disseminated to all investigators in the Sixth District.

On April 27, 1974, Officers Parker and Moore received a report of an attempted burglary in the 3400 block of Minnesota Avenue, S.E. The suspect was described as a tall black male, wearing a coat and a hat similar to a navy cap. Appellant, who was wearing a navy cap and who fit the general physical description of the suspect, was walking in the 4000 block of Minnesota Avenue at approximately 4:45 a. m. As the officers' marked cruiser approached appellant, he took off his hat and threw it into a clump of nearby bushes. Appellant was stopped and Officer Parker retrieved the hat, inside of which a pair of gloves was found. From their cruiser, the officers attempted to verify appellant's identity and to ascertain whether there were any outstanding warrants against him. Because the WALES and NCIC computer systems[2] were not functioning, they were unable to complete their check of appellant at the scene. Officer Parker then asked appellant to accompany them to the police station and "he agreed." Appellant was frisked, placed in the rear seat of the cruiser and taken to Sixth District headquarters.[3] He was interviewed until 6 a. m. at which time an officer drove appellant, at his request, to East Capitol and Benning Road, N.E., where he said he was to be picked up for work.

During the interview at the police station, Detective Leadman, who was in an office directly across from the room where appellant was seated, noticed that the soles of appellant's boots resembled the composite drawing of the shoes involved in the incidents occurring on March 27. Detective Leadman informed appellant of the "problem" they were having and asked if the police could make a cast impression of his shoe. Appellant stated "he didn't care," and the impression was taken.[4]

After appellant was discharged from the police car at the location he requested, Officers Parker and Moore returned to the scene where they first apprehended appellant. In the same bushes into which appellant had discarded his hat, a revolver was found. At the same time, the officers saw appellant returning to the scene and arrested him for carrying a pistol without a license.[5] Upon appellant's arrival at the Sixth District, Detective Leadman seized his shoes which were held as evidence and later introduced at his trial on the present charges.

Appellant contends the trial court erred in holding that his initial encounter with police did not constitute an "arrest." He maintains that an arrest without probable cause occurred upon his being transported to the police station and that evidence relating to appellant's shoes and in-court comparison with the footprints found at the scenes of the crimes should have been suppressed as the fruits of an illegal arrest.

■ Up to the time Sergeant Parker requested appellant to accompany the officers to the police station there was no arrest. The detention and questioning of appellant was an "on-the-scene" investigation that was reasonable under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

2. Washington Area Law Enforcement System and National Crime Information Center, respectively.

3. A screwdriver and pair of pliers were recovered from the frisk. Appellant does not here challenge the admission at trial of these items.

4. This cast subsequently broke and was not used at trial.

5. Appellant pleaded guilty to this offense and does not claim on appeal there was no probable cause for this arrest.

It is clear the officers could briefly stop appellant as he resembled the general description of the burglar and was walking in the vicinity of the crime shortly after it had occurred. *See Robinson v. United States,* D.C.App., 355 A.2d 567 (1976). In addition, when appellant saw the police, he threw his hat into the bushes. This act was sufficient to arouse the officers' suspicions and to allow them to "maintain the status quo momentarily while obtaining more information." *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). However, when appellant was asked to get into the cruiser to go to the police station, the situation changed. It is conceded there was no probable cause to arrest appellant.[6] Consequently, in our view the only ground upon which the trial court could have upheld the transportation of appellant to the station was that appellant voluntarily agreed to accompany the officers.

■ Courts have distinguished encounters undertaken by a person voluntarily from forcible detentions. A person is not arrested under the Fourth Amendment if he freely elects to enter into or continue an encounter with police. *See Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). To constitute an arrest, there must be a seizure or detention of the person with the intention to effect an arrest and so understood by the person detained. *Hicks v. United States,* 127 U.S.App.D.C. 209, 382 F.2d 158 (1967).

■ This court has stated that the trial court must apply the "totality of circumstances" test in determining whether an accused's consent to accompany officers outside the District after arrest is a valid waiver of his extradition rights. *United States v. Holmes,* D.C.App., 380 A.2d 598, 602 (1977). Similarly, the surrounding cir-

cumstances must be considered by the trier of fact in determining whether an individual was "seized" or voluntarily chose to undergo a confrontation with and station house interrogation by police. *Hicks v. United States, supra.* Some relevant factors to be considered are (1) whether police gave the individual the option of accompanying them to the station for investigation. *Fuller v. United States,* 132 U.S.App.D.C. 264, 407 F.2d 1199 (1968), *cert. denied,* 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969); (2) whether the individual was specifically told he was *not* under arrest. *United States v. Brunson,* 549 F.2d 348 (5th Cir.), *cert. denied,* 434 U.S. 842, 98 S.Ct. 140, 54 L.Ed.2d 107 (1977); and (3) whether a reasonable person in the suspect's shoes would have thought he was under arrest. *Hicks v. United States, supra.*[7]

The testimony at the pretrial hearing reveals that Sergeant Parker requested appellant to accompany the officers to the station and appellant "agreed." Officer Moore testified that "he didn't think" appellant was under arrest.

■ The trial court found "the defendant was asked if he would come to the 6th District Headquarters to be interviewed. And he was not under arrest . . . ." We are unable to say this finding was clearly erroneous and therefore we must accept it. *Sanders v. United States,* D.C.App., 339 A.2d 373, 376 (1975). Consequently, we conclude the initial visit to the precinct station was voluntary, and appellant was not then under arrest.[8] It was not error to deny appellant's motion to suppress the evidence relating to his shoes and the in-court comparison with the footprints.

■ Appellant next contends that his confession should have been suppressed on the grounds it was elicited in violation of

---

6. The government contends no arrest occurred. At oral argument, government counsel conceded lack of probable cause to arrest at this point.

7. Where there is a transportation to the police precinct but the government asserts no arrest occurred, there should be inquiry as to the voluntariness of the defendant's consent (if

any) to accompany the officer(s) and ordinarily the trial court must resolve the question of voluntariness.

8. When appellant was later arrested upon discovery of the gun in the bushes, there was probable cause to do so.

*Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and in violation of *Blackburn v. Alabama,* 80 S.Ct. 274, 2 L.Ed.2d 242, 361 U.S. 199 (1960), as it was not a product of his free will.[9] The uncontradicted testimony of Detective Leadman at the pretrial hearing indicated that appellant was arrested for the rape of March 27 pursuant to a valid warrant on September 10, 1974. Detective Leadman advised appellant of his constitutional rights and appellant denied involvement in the offense. Detective Leadman then told appellant "he would spend the night in the cellblock" and the next morning he would check with appellant to "see whether he had thought it over." The following day Detective Leadman pulled appellant out of a routine morning lineup and asked him if he had changed his mind about making a statement. Appellant stated he was willing to talk to Leadman and was taken to the Sex Squad office where he was again advised of his *Miranda* rights. Appellant then signed both a written waiver of his rights and a statement in which he confessed to the rape. The record also indicates that appellant had previous experiences with the legal system and with Detective Leadman in particular. On this record, we conclude there was sufficient evidence for the court to conclude that appellant was timely advised of his constitutional rights, executed a valid waiver and voluntarily signed a written confession.[10] Accordingly, the trial court did not err in denying appellant's motion to suppress his confession.

*Affirmed.*

**9.** Appellant also argues that the confession was elicited during a period of incarceration prior to his initial court appearance and, therefore, in violation of *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). We find this argument to be without merit. Appellant concedes the delay was not "per se" unreasonable as after his arrest he was presented before the next available judicial officer. In any event, in view of our holding that the trial court did not err in finding appellant had validly waived his *Miranda* rights, that waiver constituted a waiver of his *Mallory* rights as well. *Hawkins v. United States,* D.C.App., 304 A.2d 279 (1973); *Pettyjohn v. United States,* 136 U.S.App.D.C. 69, 419 F.2d 651 (1969), *cert. denied,* 397 U.S. 1058, 93 S.Ct. 1383, 25 L.Ed.2d 676 (1970).

**10.** Appellant also urges us to consider his trial testimony in determining whether the court should have admitted his confession. Appellant testified for the first time at trial that he had not understood his constitutional rights and had signed only a blank sheet of paper conditioned on Detective Leadman's promise the charges would be dismissed against him. Despite this testimony, we hold that the confession was properly before the jury. We recognize the court is required to make an independent appraisal of the voluntariness issue before submitting the confession to the jury. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Appellant was afforded a fair hearing outside the jury's presence and was free to give the court his version of the event. The pretrial hearing closed without substantiation of appellant's claim that the confession was involuntary or that, in fact, he had not confessed at all. Appellant cannot now be heard to complain that the court erred as a matter of law in admitting his confession. The jury was free to consider appellant's testimony at trial and make its own appraisal on the voluntariness of the confession. *Pyles v. United States,* 124 U.S.App.D.C. 129, 362 F.2d 959, *cert. denied,* 385 U.S. 994, 87 S.Ct. 608, 17 L.Ed.2d 453 (1966).