# Third District Court of Appeal

## State of Florida

Opinion filed December 2, 2020.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-1461
Lower Tribunal No. 90-354C
_____

## Jermaine Clarington,
Petitioner,

vs.

## The State of Florida,
Respondent.

A Case of Original Jurisdiction – Prohibition.

Law Offices of Daniel J. Tibbitt, and Daniel Tibbitt, for petitioner.

Ashley Moody, Attorney General, and Jeffrey R. Geldens, Assistant Attorney General, for respondent.

The Law Office of Jo Ann Palchak, P.A., and Jo Ann Palchak (Tampa); Carey Haughwout, Public Defender for the Fifteenth Judicial Circuit, and Benjamin Eisenberg (West Palm Beach), Assistant Public Defender; Black, Srebnick, Kornspan & Stumpf, P.A., and Jackie Perczek; Ratzan & Faccidomo, LLC, and Jude M. Faccidomo, for the National Association of Criminal Defense Lawyers, the Florida Association of Criminal Defense Lawyers, and the Florida Public Defender Association, Inc., as amici curiae.

Before EMAS, C.J., and HENDON and GORDO, JJ.

EMAS, C.J.

## I.   INTRODUCTION

Jermaine Clarington has filed a petition seeking a writ to prohibit the trial court from conducting a remote probation violation hearing.  This case involves the convergence of a public health emergency of indeterminate duration and the Florida Supreme Court's approved use of audio-video technology by which courts have largely been able to maintain a continuity of judicial operations and court proceedings.  The specific question presented is whether, in light of the current circumstances and necessities resulting from the COVID-19 pandemic, the remote conduct of a probation violation hearing by use of audio-video technology violates the defendant's rights under the Florida and United States Constitutions.[1]

## II.   BACKGROUND

Clarington was placed on probation for first-degree murder in January 2018.  Although he was initially sentenced to life in prison without the possibility of parole for this crime,[2] committed when he was fifteen years old, he was later resentenced, pursuant to new sentencing legislation for juveniles, to a term of probation.

---

[1] Clarington objected to the remote conduct of the probation violation hearing as violative of his right to counsel, right to due process and right to confrontation under the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, sections 9 and 16 of the Florida Constitution.

[2] Clarington's life sentence was imposed in 1992.  He served approximately twenty-five years in prison prior to his resentencing in 2018.

On June 9, 2020, an affidavit was filed by Clarington's probation officer, alleging Clarington (now forty-five years old) violated his probation by committing three new criminal offenses, as well as by leaving his county of residence without the consent of his probation officer and by failing to report monthly to his probation officer. Should he be found in violation of his probation, Clarington faces a potential life sentence. Clarington was taken into custody on the affidavit of violation of probation and entered a denial to the allegations. He continues to be held in the Miami-Dade County jail without bond.

In the meantime, and in the wake of the COVID-19 pandemic and resulting public health emergency, the Florida Supreme Court issued several administrative orders (and amendments thereto), establishing temporary requirements, benchmarks and guidelines for the continuity of operations within the trial and appellate courts of Florida. One such order—AOSC 20-23—amended most recently on October 2, 2020, provides: "All rules of procedure, court orders, and opinions applicable to court proceedings that limit or prohibit the use of communication equipment for the remote conduct of proceedings shall remain suspended."[3]

---

[3] Further, section III.E.(1)-(2) of AOSC 20-23, (Amendment 7, October 2, 2020) provides in pertinent part that "criminal jury selection and trial proceedings be conducted in person" and that nonjury trials in '[c]riminal cases shall be conducted remotely if the parties agree to such conduct or, if not, shall be conducted in person. As for all other proceedings, section III.E.(3) of the administrative order provides:

At a status conference, the trial court determined the probation violation hearing will be conducted remotely, using the Zoom platform. The defense objected to conducting the probation violation hearing remotely, given that Clarington and his counsel would be in separate locations, and indeed, all participants would be participating from separate locations, and no one would be physically present in the courtroom (except perhaps for the judge). Clarington asserted such a proceeding would violate his constitutional rights to counsel, confrontation and due process. Clarington agreed to remain in custody until such time as the probation violation hearing could be safely conducted in person, with the participants physically present in the courtroom.

---

All other trial court proceedings shall be conducted remotely unless a judge determines that one of the following exceptions applies, in which case the proceeding shall be conducted in person:

a. Remote conduct of the proceeding is inconsistent with the United States or Florida Constitution, a statute, or a rule of court that has not been suspended by administrative order; or

b. Remote conduct of the proceeding would be infeasible . . .

Chief judges shall take all necessary steps to ensure that the above-listed proceedings are conducted to the fullest extent possible, consistent with the guidance established in this section.

Thus, to the extent that rule 3.180 requires an in-court physical presence (and by extension prohibit the remote proceeding contemplated here), AOSC 20-23 suspends application of that rule. See discussion *infra* at 7.

In its order overruling Clarington's objections, the trial court indicated that Clarington would have an opportunity to communicate with his counsel during the course of the hearing by utilizing a breakout room during the proceeding, "whenever it is requested." The court scheduled the probation violation hearing by Zoom for October 16, 2020.[4] This petition followed.

## III. DISCUSSION AND ANALYSIS

### The Right to Be Physically Present in the Courtroom

As a general proposition, "[c]riminal defendants have a due process right to be physically present in all critical stages of trial." Muhammad v. State, 782 So. 2d 343, 351 (Fla. 2001). See also Kentucky v. Stincer, 482 U.S. 730, 745 (1987) (holding "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure.") Thus, in determining whether this proceeding requires compliance with this constitutional mandate, a court must consider two primary questions: (1) is the proceeding a "critical stage of trial" and (2) can this requirement of "presence" be satisfied by a defendant appearing by some method other than in-person physical presence, such as (in this case) a remote proceeding by Zoom? Additionally, a court may need to address whether there are any exceptions

---

[4] As a result of the filing of this petition and the briefing schedule, the hearing has been reset for December 7, 2020.

to the general rule, which would allow for the conduct of certain proceedings in light

of compelling circumstances or necessities.

### Applicability of Florida Rule of Criminal Procedure 3.180 to Probation Violation Hearings

Florida's Rules of Criminal Procedure shed some light on the questions we

must resolve. Rule 3.180, entitled "Presence of Defendant," provides:

> (a) Presence of Defendant. In all **prosecutions for crime** the defendant
>     shall be present:
> (1) at first appearance;
> (2) when a plea is made, unless a written plea of not guilty shall be
> made in writing under the provisions of rule 3.170(a);
> (3) at any pretrial conference, unless waived by the defendant in
> writing;
> (4) at the beginning of the trial during the examination, challenging,
> impaneling, and swearing of the jury;
> (5) at all proceedings before the court when the jury is present;
> (6) when evidence is addressed to the court out of the presence of the
> jury for the purpose of laying the foundation for the introduction of
> evidence before the jury;
> (7) at any view by the jury;
> (8) at the rendition of the verdict; and
> (9) at the pronouncement of judgment and the imposition of sentence.

(Emphasis added.)

Rule 3.180(b) further defines the term "presence":

> (b) Presence; Definition. Except as permitted by rule 3.130 relating to
>     first appearance hearings,[5] a defendant is present for purposes of

---

[5] Florida Rule of Criminal Procedure 3.130(a), entitled "First Appearance," provides in pertinent part:

> Except when previously released in a lawful manner, every arrested
> person shall be taken before a judge, <u>either in person or by electronic</u>

6

this rule if the defendant is **physically in attendance for the courtroom proceeding, and has a meaningful opportunity to be heard through counsel on the issues being discussed**.

(Emphasis added.)

**Florida Supreme Court's Temporary Suspension of Rule 3.180**

On its face, the term "presence," as defined in rule 3.180(b), would reasonably lead one to conclude that the conduct of a remote probation violation hearing in which the judge, the attorneys, the defendant, and the witnesses are all in different locations, is prohibited by this rule. However, probation violation hearings are not expressly included within the scope of rule 3.180, which by its terms applies to "prosecutions for crime." Moreover, even if rule 3.180 were construed to include probation violation hearings within its scope, the Florida Supreme Court has temporarily suspended application of this rule in light of the public health emergency created by COVID-19, by which the conduct of in-person proceedings could pose a risk of exposure to, or transmission of, the novel coronavirus.

As of November 20, 2020, there were more than 209,000 confirmed cases of COVID-19 in Miami-Dade County; more than 8,400 people hospitalized in Miami-

---

audiovisual device in the discretion of the court, within 24 hours of arrest.

Thus, it can be seen that rule 3.180, adopted by the Florida Supreme Court in 1984, recognizes that there are stages of a criminal proceeding (even those enumerated within that very rule) that are authorized to be conducted in a remote or virtual manner.

7

Dade County for COVID-19; and more than 3,700 deaths in Miami-Dade County from COVID-19.[6] The statewide figures are even more daunting: more than 914,000 confirmed cases of COVID-19; more than 52,000 hospitalizations, and more than 17,800 deaths in Florida from COVID-19 as of November 20, 2020.

In light of the COVID-19 pandemic and the resulting public health emergency, the Florida Supreme Court issued several administrative orders (and amendments thereto) in an effort to provide temporary guidelines, benchmarks and requirements for the continuity of operations within the trial and appellate courts. See e.g., AOSC20-23, AOSC20-32,[7] outlining distinct phases and requirements for court operations and establishing benchmarks which must be satisfied before a court may move into the next phase of court operations.

One such order (AOSC20-23), amended October 2, 2020, provides: "All rules of procedure, court orders, and opinions applicable to court proceedings that limit or prohibit the use of communication equipment for the remote conduct of proceedings shall remain suspended." Further, AOSC 20-23, section III.E.(3) (Amendment 7,

---

[6] This data can be found online on the State of Florida Department of Health's COVID-19 Data and Surveillance Dashboard, at Department of Health's Dashboard, https://experience.arcgis.com/experience/96dd742462124fa0b38ddedb9b25e429, last accessed November 20, 2020.

[7] The latest versions of these the Florida Supreme Court's COVID-19 Emergency Orders and Advisories can be found on the Florida Supreme Court's website, at https://www.floridasupremecourt.org/Emergency, last accessed November 20, 2020.

October 2, 2020) provides in pertinent part that, other than jury and nonjury trials all other criminal trial proceedings "shall be conducted remotely unless a judge determines that . . . remote conduct of the proceeding is inconsistent with the United States or Florida Constitution . . . ."

Thus, to the extent that rule 3.180 could be construed to limit or prohibit the remote probation violation hearing contemplated here,[8] AOSC 20-23 suspends application of that rule. We therefore must determine whether the remote conduct of a probation violation hearing would be inconsistent with the United States or Florida Constitution.

**Remote Conduct of A Probation Violation Hearing Does Not Violate Clarington's Constitutional Rights**

The remaining question is whether, regardless of the applicability of rule 3.180 to probation violation hearings (and the temporary suspension of that rule by the Florida Supreme Court pursuant to AOSC20-23), the remote conduct of a probation violation hearing, in which the defendant is not physically present in the

---

[8] Rule 3.180 does not expressly include probation violation hearings, but instead is limited to pre-adjudicative and adjudicative proceedings (first appearance, entry of plea, pretrial conference, trial and sentencing). A probation violation hearing, by contrast, is a post-adjudicative, post-sentencing proceeding; by that, a defendant has already been found to have violated the law (either by plea or trial) and has been sentenced to a term of probation. As will be seen from the discussion *infra*, the rights attendant to a violation of probation proceeding are not co-extensive with those afforded an accused prior to a determination of guilt and (if found guilty) imposition of sentence.

9

courtroom and each participant (including the defendant and his counsel) is at separate locations, violates Clarington's constitutional right of confrontation, due process, or counsel. We conclude that in light of the nature of a probation violation hearing and the circumstances posed by the current public health emergency, the remote conduct of such a hearing does not violate probationer Clarington's rights to confrontation or due process. We decline at this procedural juncture to reach the issue as it relates to the claimed violation of Clarington's right to counsel, without prejudice to Clarington raising such a claim, if appropriate, in a subsequent appeal.

### The Flexible Nature of Due Process Rights

The concept of due process is not rigid or static, but flexible and dynamic. As the United States Supreme Court observed in Morrissey v. Brewer, 408 U.S. 471, 481 (1972), "due process is flexible and calls for such procedural protections as the particular situation demands." See also Mitchell v. W.T. Grant Co., 416 U.S. 600, 610 (1974) (noting: "The requirements of due process of law 'are not technical, nor is any particular form of procedure necessary.' Due process of law guarantees 'no particular form of procedure; it protects substantial rights.' 'The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.'") (citations omitted); Caple v. Tuttle's Design-Build, Inc., 753 So. 2d 49, 51 (2000) (recognizing: "It has long been established that flexibility is a concept fundamental to a determination of the adequacy of a statute's due process

10

protections . . . . Furthermore, rather than articulating a laundry list of specific procedures required to protect due process, the United States Supreme Court has emphasized that the protection of due process rights requires balancing the interests of the parties involved.") (citations omitted). Whether a proceeding comports with fundamental principles of due process depends on, and is informed by, the attendant circumstances and a balancing of the competing interests at stake.

In assessing whether the proceeding below satisfies constitutional precepts of due process[9], two matters are worthy of note: first, the proceeding at issue is a violation of probation hearing and a probationer is not afforded the same panoply of rights afforded an accused in a criminal prosecution. Second, the proceeding arises in the midst of a global pandemic which has spawned a public health emergency in

---

[9] The Fifth Amendment to the United States Constitution provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

Article I, section 9 of the Florida Constitution provides:

> No person shall be deprived of life, liberty or property without due process of law, or be twice put in jeopardy for the same offense, or be compelled in any criminal matter to be a witness against oneself.

Miami-Dade County and (to varying extents) across the entire State. The Florida Supreme Court's administrative orders are crafted in an effort to strike the proper balance between the competing interests of ensuring the health and safety of all those entering the courthouse; expeditiously and properly adjudicating criminal cases consistent with our obligation as a branch, especially those cases in which the accused remains in custody; and preserving those fundamental due process rights afforded to an accused.

**Probation Violation Hearing Is Not A Criminal Prosecution**

A probation violation hearing is not considered a "critical stage of trial" which would automatically trigger a defendant's constitutional confrontation right. Unlike a criminal prosecution, a probation violation hearing is a post-adjudicatory proceeding. Probation has long been described as an "act of judicial grace," see State v. Dodd, 396 So. 2d 1205, 1208 (Fla. 3d DCA 1981). As our sister court has cogently observed:

> It is well established that "[p]robation is an act of grace to a defendant convicted of a crime." Peraza v. Bradshaw, 966 So. 2d 504, 505 (Fla. 4th DCA 2007). Because a probationer has already been afforded the full panoply of constitutional protections guaranteed by the Constitution to an accused individual prior to his or her conviction, "[w]hen a defendant violates probation, that defendant is not in the same position as a defendant arrested for the commission of a crime for which he or she is deemed innocent until proven guilty beyond a reasonable doubt." Id. As a matter of "grace ... [probation is also] subject to the trial court's discretion." Saidi v. State, 845 So. 2d 10 1028 (Fla. 5th DCA 2003).

12

Bell v. State, 179 So. 3d 349, 351 (Fla. 5th DCA 2015). See also State ex rel. Roberts v. Cochran, 140 So. 2d 597, 599 (Fla. 1962) (holding: "The trial judge who prescribes probation in lieu of immediate imprisonment is allowed a broad judicial discretion to determine whether the conditions of the probation have been violated, and, therefore, whether the revocation of probation is in order.")

By the time a probationer is charged with a violation of probation, his criminal case has already been adjudicated and, whether by plea or trial, a finding of guilt has already been made and a probationary sentence has already been imposed. Further, while a probation violation can result from the commission of a new criminal offense, such is not required for the commencement of a probation violation proceeding. A probationer can be found to have violated his probation by failing to comply with mandatory conditions that do not rise to the level of a criminal offense. Indeed, when a defendant is found in violation of his probation, and his probation is revoked, he is thereafter sentenced for the original offense: an offense for which he was already found guilty and for which he was already provided the full panoply of due process rights attendant to that earlier criminal prosecution.

In light of these important differences, it is well established that a probationer's liberty interests are not co-extensive with those afforded an accused in a criminal prosecution. See e.g., Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (holding probation revocation is not a stage of a criminal prosecution); Del Valle v.

13

State, 80 So. 3d 999, 1018 (Fla. 2011) (observing: "In probation revocation proceedings, 'the probationer is entitled to less than the full panoply of due process rights accorded a defendant in a criminal trial.'" (quoting Carchman v. Nash, 473 U.S. 716, 726 (1985))); Peters v. State, 984 So. 2d 1227, 1229 (Fla. 2008) (holding "revocation of probation or community control proceedings are not criminal prosecutions" (citing Morrissey, 408 U.S. at 480)).[10]

Below are some examples of significant differences between the rights afforded a probationer in a violation of probation hearing as compared to those afforded an accused in a criminal prosecution:

• A probationer has no constitutional right to pretrial release while being held pending a hearing on an alleged violation of probation (see § 948.06(1)(e)2., Fla. Stat. (2019)).

---

[10] Compare U.S. v. Thompson, 599 F.3d 595 (7th Cir. 2010), where the Seventh Circuit Court of Appeals held that a trial judge's participation in supervised release revocation hearing via videoconference violated Federal Rule of Criminal Procedure 43. The question of whether a probation violation hearing conducted remotely would violate Florida Rule of Criminal Procedure 3.180 is not at issue in this case because, as previously discussed, AOSC 20-23 suspended "all rules of procedure . . . that limit or prohibit use of communication equipment" so long as such remote proceeding is not inconsistent with the Florida or United States Constitutions. We therefore consider here only whether the conduct of such a hearing would violate Clarington's applicable constitutional rights.

14

• A probationer has no right to a jury trial on the revocation of his probation. Drayton v. State, 177 So. 2d 250 (Fla. 3d DCA 1965) (holding: "No such right exists.")

• "The standard of proof at a probation violation hearing is preponderance of the evidence, a significantly lower standard than that required at trial." State v. Medina, 118 So. 3d 944, 949 (Fla. 3d DCA 2013).

• "Hearsay evidence is admissible in violation of probation hearings and can sustain a violation when corroborated by direct evidence." Robertson v. State, 800 So. 2d 338, 339 (Fla. 3d DCA 2001).

• There is no constitutional right of confrontation at a probation hearing. See Russell v. State, 982 So. 2d 642, 646 (Fla. 2008) (holding Crawford v. Washington, 541 U.S. 36 (2004), does not apply to revocation proceedings); Souza v. State, 229 So. 3d 387 (Fla. 4th DCA 2017).

• A probationer may assert only a qualified privilege against compulsory self-incrimination at the probation violation hearing. See Watson v. State, 388 So. 2d 15 (Fla. 4th DCA 1980) (holding a probationer may not validly invoke a Fifth Amendment privilege to refuse to answer questions at a probation violation hearing regarding non-criminal conduct alleged to constitute the violation of probation, and the court may infer a probationer's refusal to answer questions as evidence of non-

compliance with the terms of his probation (citing State v. Heath, 343 So. 2d 13 (Fla. 1977))).

**The Right to Face-to-Face Confrontation at a Probation Violation Hearing**

In Morrissey, 408 U.S. at 480, the United States Supreme Court recognized that "revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." The United States and Florida Supreme Courts have subsequently applied this holding with equal force to probation (and community control) revocation proceedings. See Gagnon, 411 U.S. at 782 (holding: "Probation revocation, like parole revocation, is not a stage of a criminal prosecution").

In Peters v. State, 984 So. 2d 1227 (Fla. 2008), the defendant was alleged to be in violation of his probation for using illegal narcotics. At the probation violation hearing, the trial court allowed the State to prove the violation by introducing the written laboratory results of defendant's urine tests without calling any witness to lay the foundation for admission of the report as a business record under section 90.803(6), Florida Statutes. Peters was found to have violated his probation and, on appeal, contended that his Sixth Amendment right to confront and cross examine

witnesses was violated, citing to Crawford v. Washington, 541 U.S. 36 (2004).[11]

The First District held that Crawford did not apply to probation revocation hearings, and on review, the Florida Supreme Court approved the First District's decision, holding:

> Because a probationer has already been found guilty of the crime charged before being placed on probation or under community supervision, the revocation proceeding implicates only a limited, conditional liberty interest rather than the absolute liberty interest enjoyed by a criminal defendant prior to trial. Therefore, a revocation proceeding cannot be equated to a criminal prosecution for Sixth Amendment Confrontation Clause purposes.

Peters, 984 So. 2d 1233. See also Russell v. State, 982 So. 2d 642, 645-46 (Fla. 2008) (explaining that because Crawford v. Washington addresses the use of testimonial hearsay only in the context of a "criminal prosecution," the decision in Crawford does not apply to probation revocation proceedings).

Thus, from a constitutional standpoint it is clear that probation violation hearings are not "criminal prosecutions" under the Sixth Amendment's Confrontation Clause.[12] See State v. Cochran, 140 So. 2d 597, 599 (Fla. 1962)

---

[11] In Crawford, the United States Supreme Court held that an out-of-court testimonial statement of an unavailable declarant is not admissible at a criminal trial unless the defendant had a prior opportunity to cross-examine the declarant.

[12] The Sixth Amendment to the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have

17

(holding a probation revocation hearing "is not required to assume the full proportions of a criminal trial")); <u>Souza</u>, 229 So. 3d 389 (holding the Sixth Amendment "does not apply to probation revocation proceedings.")

Indeed, even in the context of a criminal trial, a defendant's Sixth Amendment right to physically confront a witness face-to-face is not absolute. Instead, it is subject to an analysis undertaken in light of the circumstances presented, balancing the competing interests, public policy or necessities of the case. <u>See e.g.</u>, <u>Harrell v. State</u>, 709 So. 2d 1364, 1368 (Fla. 1998) (recognizing: "Although the Confrontation Clause guarantees a criminal defendant the right to physically confront accusers, this right is not absolute. There are certain exceptions where a defendant's right of face-to-face confrontation will give way to 'considerations of public policy and the necessities of the case'" (citing <u>Maryland v. Craig</u>, 497 U.S. 836, 845-46, 849 (1990)

been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

Article I, section 16 of the Florida Constitution provides in pertinent part:

In all criminal prosecutions the accused shall, upon demand, be informed of the nature and cause of the accusation, and shall be furnished a copy of the charges, and shall have the right to have compulsory process for witnesses, to confront at trial adverse witnesses, to be heard in person, by counsel or both, and to have a speedy and public trial by impartial jury in the county where the crime was committed.

18

(noting that the "primary object" of the Confrontation Clause "was to prevent depositions or ex parte affidavits . . . being used against the prisoner in lieu of a personal examination and cross-examination of the witness . . . compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief," and further noting that the "combined effect of these elements of confrontation—physical presence, oath, cross-examination, and observation of demeanor by the trier of fact—serves the purpose of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo-American criminal proceedings," and finally concluding: "That the face-to-face confrontation requirement is not absolute does not, of course, mean that it may easily be dispensed with. . . . [O]ur precedents confirm that a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured."))

**Due Process Right of Physical Presence Balanced against Important State Interests, Public Policy or Necessities of the Case**

Notwithstanding these distinctions between probation and criminal prosecutions, it is and remains well established that a defendant in a probation

19

violation proceeding is afforded certain minimum due process rights. As the Florida

Supreme Court acknowledged in Lawson v. State, 969 So. 2d 222, 230 (Fla. 2007):

> This Court has repeatedly held, as early as 1947 in Brill v. State, 159
> Fla. 682, 32 So. 2d 607 (1947), and later in accordance with the United
> States Supreme Court's decisions in Morrissey v. Brewer, 408 U.S. 471,
> 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and Gagnon v. Scarpelli, 411
> U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), that the power to
> revoke probation must be exercised in accordance with due process
> principles. These principles require the trial court to provide a
> defendant with notice of the alleged violation and an opportunity to be
> heard prior to revoking probation.

(Citations omitted.)

We note that these due process requirements are found in section 948.06,

Florida Statutes (2020) which provides, inter alia, that the trial court "shall inform

the person of the violation," and if the probationer does not admit to the violation

"the court, as soon as may be practicable, shall give the probationer or offender an

opportunity to be fully heard on his or her behalf in person or by counsel." See §§

948.06(1)(e)1.a.,(2)(d).

And as alluded to earlier, the concept of a defendant's constitutional right to

confront his accuser and to be physically present in the courtroom has historically

been addressed by courts in two contexts: the difference between in-person

testimony versus documentary evidence, see, e.g., Craig, 497 U.S. at 845-46 (noting

that the "primary object" of the Confrontation Clause "was to prevent depositions

or ex parte affidavits . . . being used against the prisoner in lieu of a personal

examination and cross-examination of the witness . . . compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief"); and the difference between an accused being physically present in the courtroom versus being entirely absent from the proceeding (and thereby precluded from participating in any fashion). This latter example is most often found in the sentencing context, where a trial court in a criminal prosecution erroneously conducts a sentencing (or resentencing) hearing without the defendant being present at all, therefore denying the accused a meaningful opportunity to participate or to be heard. See e.g., Jackson v. State, 767 So. 2d 1156, 1159 (Fla. 2000) (holding capital defendant has due process right to be present at her resentencing and given a reasonable opportunity to be heard); Lee v. State, 257 So. 3d 1132 (Fla. 3d DCA 2018) (holding where trial court granted motion to correct illegal sentence, defendant had a right to be present at the resentencing and to be represented by counsel; conducting a resentencing proceeding in which neither the defendant nor his attorney was present violated defendant's due process rights); Gonzalez v. State, 221 So. 3d 1225 (Fla. 3d DCA 2017) (same); Thompson v. State, 208 So. 3d 1183, 1187 (Fla. 3d DCA 2017) (holding resentencing defendant in absentia violated defendant's due process rights). See also Jordan v. State, 143 So. 3d 335, 338 (Fla. 2014) (reaffirming that a defendant has a right to be present at the pronouncement

21

of judgment and the imposition of sentence, and noting that this right has been extended to resentencing hearings as well).

There are few cases which address, at a constitutional level, the concept of a defendant's "physical presence in the courtroom" as posed here: the difference between a defendant being physically present with his counsel, the judge and the witnesses, versus a proceeding conducted remotely by audio-video technology in which those participants are at separate locations.

In this regard, we find it helpful to consider the analytical framework relied upon by the Florida Supreme Court in Doe v. State, 217 So. 3d 1020 (Fla. 2017), because it did explicitly address the due process requirement of physical, in-court presence of the defendant and the trial judge for certain proceedings: "At the heart of this case is the right of an individual to have a judicial officer physically present at hearings held to determine whether the individual may be involuntarily committed to a mental health facility or hospital pursuant to section 394.467, Florida Statutes (2016) ("the Baker Act")." Id. at 1022.

The Florida Supreme Court ultimately held:

> The right to be present at an involuntary commitment hearing is a fundamental due process right. Mouliom v. Ne. Fla. State Hosp., 128 So. 3d 979, 981 (Fla. 1st DCA 2014). While a patient may waive the right to be personally present, a court must certify that the waiver is knowing, intelligent, and voluntary. Id. The requirement of physical presence, which is not disputed by any of the parties, would be meaningless if the judicial officer, or the finder of fact and ultimate decision-maker, is not also present in the hearing room.

22

Id. at 1026.

And while Doe, like the instant case, involves the issue of physical presence versus remote presence, there are distinguishing aspects between the two cases that compel a different result than the one reached in Doe.

Doe addressed the remote conduct of Baker Act hearings on a permanent basis. In other words, the question posed in Doe was not whether, under the temporal health and safety concerns created by a public health emergency, remote proceedings could be held on an interim basis consistent with principles of due process during a temporary suspension of court rules that would otherwise require in-person proceedings. Instead, the Florida Supreme Court was asked to determine whether, on an ongoing basis, and without any accompanying necessity or compelling state interest, judges could conduct Baker Act proceedings remotely. In rejecting such a procedure, the Doe Court importantly noted:

> Convenience of the judicial officer is insufficient to justify the violation of an individual's constitutional rights. Indeed, the Amicus Brief of the Fifteenth Judicial Circuit offers no reason other than expediency for desiring a pilot program allowing for the remote appearance of judicial officers via videoconferencing technology. By contrast, the Amicus, Disability Rights of Florida, Inc., offers compelling argument as to why the remote appearance of judicial officers is harmful to patients and ultimately does not satisfy their right to be physically present and aware of the proceedings at the Baker Act hearing. . . .

Id.

In contrast to Doe, the proposed remote conduct of a probation violation hearing in the instant case is a temporary procedure, and a reasonable one crafted in response to the current necessities of a public health emergency. There can be little doubt that a probationer has a significant interest in being physically present in a courtroom together with the other participants at his probation violation hearing. However, the State (as well as the general public and the victim in particular) have a significant interest in ensuring the effective and expeditious administration of justice. In light of the temporary nature of the proposed conduct of remote proceedings at issue here, and balancing the defendant's interests against the competing interests at stake and the necessities created by the threat to public health and safety posed by the novel Coronavirus, we find Doe distinguishable from the instant case and conclude that, under the circumstances presented, the trial court's order directing that the probation violation hearing be conducted by use of remote technology in which each of the participants will be at a separate location, does not violate Clarington's right to confrontation or due process.[13]

---

[13] We also note the significance placed by the Doe Court on the fact that Baker Act proceedings involved a distinct group of Florida's most vulnerable individuals: "Courts must be especially careful to protect those due process rights when dealing with a vulnerable segment of the population and making a decision that ultimately results in a "massive curtailment of liberty." Doe, 217 So. 3d 1026 (citation omitted). The Doe Court further noted that "the remote presence of judicial officers could likely be injurious to the patient's condition." Id. at 1027. Indeed, on at least eight occasions in its opinion, the Doe Court made reference to the "vulnerable" nature of individuals subject to the Baker Act, and the impact remote proceedings would have

To the extent Clarington alleges that the remote conduct of the proceeding violates his right to effective assistance of counsel, we conclude that such a claim is too speculative at this point to resolve by way of a preemptive petition seeking prohibition relief.[14]  In other words, we know, based upon the trial court's order, that the violation hearing will proceed by witnesses testifying remotely, and we are able to conclude (as we have) that this procedure does not violate Clarington's confrontation or due process rights.  To the extent, however, that Clarington suggests (for example) that his right to meaningful assistance of, and consultation with, counsel will be violated if he and counsel are in two different locations during the proceeding and communicating by use of audio-video equipment, we decline to address those claims at this point, as we would have to rely upon supposition rather than a record to determine whether (or the extent to which) the proceedings

---

on such a vulnerable population.  This is a factor to be weighed in assessing the fairness, accuracy and reliability of the remote proceeding.

[14] To be sure, the procedures utilized for conducting a probation violation hearing, even one that is conducted remotely, must nevertheless ensure that Clarington is provided an adequate ability to participate in and view the proceedings, to consult with and receive the assistance of counsel, and to have a meaningful opportunity to be heard. Given the trial court's assurances that it will permit Clarington and his counsel to communicate with each other contemporaneously during the presentation of evidence and argument, and that the trial court will take breaks to permit Clarington and his counsel to speak, consult and otherwise communicate with each other as much and as long as reasonably necessary during the proceeding, there is no basis in the present record for any claim that Clarington will be denied the same access to his attorney, or the same ability to fully participate during the hearing, as he would be afforded if the hearing were held in person.

interfered with these rights. See State ex rel. Ferre v. Kehoe, 179 So. 2d 403, 405 (Fla. 3d DCA 1965) (holding that upon a determination that the trial court has jurisdiction to proceed, the appellate court "will not issue a writ of prohibition on the assumption that the [trial] court will exercise that jurisdiction erroneously.") Our decision not to address this aspect of Clarington's petition is without prejudice to his right to raise these claims in a direct appeal.

## IV.   CONCLUSION

Clarington and his counsel, as well as amici curiae,[15] raise substantial and compelling arguments in opposition to the remote conduct of probation violation hearings.  We have carefully considered these arguments, as well as those offered by the State.  We note that, under ordinary circumstances, a probationer would be physically present in the courtroom, together will all other participants, during a probation violation hearing.  But the question is not what should or will happen in ordinary circumstances.  The question is whether the Florida Supreme Court's limited and temporary suspension of certain procedural rules, and the issuance of temporary administrative orders, permit the remote conduct of a probation violation hearing consistent with the rights of confrontation and due process provided by the

---

[15] The court extends its appreciation to the National Association of Criminal Defense Lawyers, Florida Association of Criminal Defense Lawyers, and Florida Public Defender Association for their participation and filing of a joint amicus curiae brief in this cause.

Florida and United States Constitution. The Florida Supreme Court's administrative orders, crafted in the wake of the COVID-19 pandemic, are intended to strike a proper balance between the competing interests of ensuring the health and safety of all those entering the courthouse; expeditiously and properly adjudicating criminal cases, especially those cases in which the accused remains in custody; and preserving those fundamental rights afforded to an accused.

We conclude that the proceeding proposed by the trial court in this case appropriately considered these necessities and competing interests, balancing the defendant's constitutional rights and the responsibility of the judicial system to hear, adjudicate and dispose of criminal matters and conduct criminal proceedings, through the application of temporary procedures needed to ensure the health and safety of those participating.

We therefore hold that, under the circumstances presented, the trial court's order directing that the probation violation hearing be conducted by use of remote technology in which each of the participants will be at a separate location, does not violate Clarington's rights to confrontation and due process. We leave for another day Clarington's claim that the conduct of the remote proceeding will impermissibly interfere with or violate his constitutional right to counsel.[16]

---

[16] We also decline at this time to address the claim, raised in the amicus brief, that Clarington has a constitutional right to be physically present in the courtroom at any sentencing that may follow a determination that he violated his probation.

27

We emphasize the narrow scope of our decision. This opinion denying Clarington's petition for a writ of prohibition, and the analysis that informs that decision, is limited to the nature of the proceeding at issue (a violation of probation proceeding), and the question whether such proceeding, if conducted remotely by audio-video technology, violates petitioner's due process and confrontation rights, weighed and analyzed in light of the Coronavirus pandemic and the Florida Supreme Court's current administrative orders regulating the conduct of criminal proceedings in the midst of that public health emergency.

Petition denied.

HENDON, J., concurs.

GORDO, J. (Concurring in result only).

I concur only in the majority's result of denying prohibition. "A writ of prohibition is an appropriate, if extraordinary, remedy that lies when a lower court is without jurisdiction or is attempting to act in excess of its jurisdiction." Durham v. Butler, 89 So. 3d 1023, 1025 (Fla. 3d DCA 2012) (citations omitted). Mr. Clarington's petition fails to meet the requirements for issuance of the extraordinary writ sought. Thus, I decline to join the majority's analysis, particularly to the extent that it negates a defendant's constitutional rights by balancing them with the competing interests of the temporary pandemic. "The Constitution of the United States is a law for rulers and people, equally in war and in peace, and covers with the shield of its protection all classes of men, at all times, and under all circumstances." Ex Parte Milligan, 71 U.S. 2, 120–21 (1866).